Douglas LEHMANN and Virginia
Lehmann, Petitioners,

v.

HAR–CON CORPORATION,
Respondent.

Melvin G. Harris and Helena
M. Harris, Petitioners,

v.

Harbour Title Company, Respondent.

Nos. 99–0406, 99–0461.

Supreme Court of Texas.

Argued Jan. 26, 2000.

Decided Feb. 1, 2001.

.

Howard R. King, Hill Angel & King, Houston, for Petitioner in No. 99-0406.

James E. Simmons, Simmons & Lawrence, John H. Thomisee, Jr., Henry S. Platts, Chalker Bair, Houston, for Respondent in No. 99-0406.

James F. Tyson, Houston, Jerry D. Conner, Conner & Dreyer, Houston, for Petitioner in No. 99-0461.

Ben A. Baring, Paul J. McConnell, III, DeLange Hudspeth McConnell & Tibbetts, Houston for Respondent in No, 99-0461.

Justice HECHT delivered the opinion of the Court, in which Chief Justice PHILLIPS, Justice OWEN, Justice ABBOTT, and Justice O'NEILL joined.

In these two consolidated cases we revisit the persistent problem of determining when a judgment rendered without a conventional trial on the merits is final for purposes of appeal. We consider only cases in which one final and appealable judgment can be rendered and not cases, like some probate and receivership proceedings, in which multiple judgments final for purposes of appeal can be rendered on certain discrete issues.[1] And we consider a judgment's finality only for purposes of appeal and not for other purposes, such as issue and claim preclusion.[2] In *Mafrige v. Ross*,[3] we held that a summary judgment is final if it contains language purporting to dispose of all claims and parties. We gave as one example of such language what we have called a "Mother Hubbard" clause [4]—a recitation that all relief not expressly granted is denied.[5] Since then, the routine inclusion of this general statement in otherwise plainly interlocutory orders and its ambiguity in many contexts have rendered it inapt for determining finality when there has not been a conventional trial. We no longer believe that a Mother Hubbard clause in an order or in a judgment issued without a full trial can be taken to indicate finality. We therefore hold that in cases in which only one final and appealable judgment can be rendered, a judgment issued without a conventional trial is final for purposes of appeal if and only if either it actually disposes of all claims and parties then before the court, regardless of its language, or it states with unmistakable clarity that it is a final judg-

1. *See Crowson v. Wakeham,* 897 S.W.2d 779, 783 (Tex.1995) (involving probate proceedings); *Huston v. Federal Deposit Ins. Corp.,* 800 S.W.2d 845, 847 (Tex.1990) (involving receivership proceedings).

2. *See Street v. Honorable Second Court of Appeals,* 756 S.W.2d 299, 301 (Tex.1988).

3. 866 S.W.2d 590 (Tex.1993).

4. *Teer v. Duddlesten,* 664 S.W.2d 702, 704 (Tex.1984).

5. *Mafrige,* 866 S.W.2d at 590 n. 1.

ment as to all claims and all parties. In the two cases before us, the court of appeals concluded that judgments that do not meet this test were final and dismissed the appeals as having been untimely perfected.[6] We reverse and remand for consideration of the merits of the appeals.

## I

### *Lehmann v. Har–Con Corp.*

Douglas and Virginia Lehmann sued the University of St. Thomas and Har–Con Corp. in the district court in Harris County to recover damages for injuries Douglas suffered in a construction accident. The University cross-claimed against Har–Con for indemnity. The Lehmanns settled with Har–Con and executed a release, agreeing in part to indemnify Har–Con against certain claims which had been or could be asserted by or through them. Virginia then filed an amended petition on behalf of her minor son against both defendants, claiming damages for loss of parental consortium because of his father's injuries. In response, Har–Con filed a counterclaim against Virginia and a third-party petition against Douglas, seeking indemnity from them under the terms of their prior release.

The Lehmanns and Har–Con all moved for summary judgment on Har–Con's indemnity claims. The district court denied the Lehmanns' motion and granted Har–Con's motion. The court's order granting Har Con's motion stated in full:

[caption]

### ORDER

On this *12* day of *March,* 1998 came on to be considered the Motion for Summary Judgment of HAR–CON CORPORATION. After considering the motion, the response, the summary judgment evidence and the argument of counsel, the Court is of the opinion that

the motion should be in all things granted. It is therefore,

ORDERED, ADJUDGED AND DECREED that the Motion for Summary Judgment by HAR–CON CORPORATION be and it is hereby GRANTED.

All relief not expressly granted herein is denied.

Signed this the *12* day of *March,* 1998

s/_____

JUDGE PRESIDING

[s/ Attorneys for Har–Con Corporation]

The order did not reference Virginia's claims on behalf of her son against Har–Con, although it would appear that Har Con's summary judgment on its indemnity claim would effectively bar recovery for Virginia's son. The order also did not reference Virginia's son's claims against the University, which would not appear to be affected by Har–Con's summary judgment. The order contained a "Mother Hubbard" clause stating that "[a]ll relief not expressly granted herein is denied."

The district clerk advised the Lehmanns by postcard that an interlocutory summary judgment order had issued. The record does not reflect whether the parties received a copy of the actual order after it was signed. The Lehmanns tell us that the practice of the district clerk in Harris County is not to send copies of orders to the parties but to give parties notice by postcard when orders are signed. The notice does not completely describe the content of the order.

The Lehmanns appear to have believed that the summary judgment order was interlocutory because they moved to sever it and Har–Con's claims into a separate action, ostensibly to make the summary judgment final. The court granted the motion to sever on the twenty-fifth day after the summary judgment order was signed. Twenty-eight days after the sev-

**6.** *Lehmann v. Har–Con Corp.,* 1998 WL 429853 (Tex.App.—Houston [14th Dist.] 1998), 988 S.W.2d 415 (1999) (op. on reh'g); *Harris v. Harbour Title Co.,* 1999 WL 211859 (Tex.App.—Houston [14th Dist.] 1999).

erance order was signed, the Lehmanns noticed their appeal from the summary judgment order.

If the summary judgment was not final until the severance order was signed, then the Lehmanns' appeal was timely. But the court of appeals held that the summary judgment order was final when it issued because of the Mother Hubbard clause and that the order was not modified by the severance so as to restart the time for perfecting appeal.[7] Because the Lehmanns did not perfect appeal within thirty days of the signing of the order as prescribed by the rules of appellate procedure,[8] the court dismissed the appeal for want of jurisdiction. In holding that the summary judgment order was final, the court followed our decision in *Mafrige*, although the court expressed concerns that the inclusion of a Mother Hubbard clause in an otherwise plainly interlocutory order should not make the order final.

We granted the Lehmanns' petition for review and consolidated it for argument and decision with *Harris v. Harbour Title Co.*[9]

### *Harris v. Harbour Title Co.*

Melvin and Helena Harris sued five defendants—Greenfield Financial Corp. and Larry J. Greenfield ("the Greenfield defendants"), Tim Rice and Rice Development, Inc. ("the Rice defendants"), and Harbour Title Co.—in the district court in Harris County on breach-of-contract and tort claims arising from a conveyance of real property. The court granted an interlocutory default judgment against Tim Rice on liability only, leaving for later a determination of the damages to be assessed against him. The Harrises nonsuited their claims against the Greenfield defendants. The fifth defendant, Harbour Title Co., moved for summary judgment, which the court granted with the following order:

[caption]

Order Granting Harbour Title Company's

Motion for Summary Judgment

On August 28, 1998, came on to be heard the Motion for Summary Judgment of one of the defendants, Harbour Title Company, and the Court having considered the Motion, together with any response, and the supplemental briefing filed by the parties to date is of the opinion that said Motion is with merit and should be granted. It is therefore

ORDERED that defendant Harbour Title Company's Motion for Summary Judgment is in all things granted; it is further

ORDERED that the Plaintiffs, Melvin G. Harris and Helena M. Harris take nothing as to any of their claims against Harbour Title Company.

All relief requested and not herein granted is denied.

SIGNED this *15* day of October 1998.

s/———————

JUDGE PRESIDING

APPROVED AND ENTRY REQUESTED:

[s/ Attorneys for Harbour Title Company]

Although the order did not reference the Harrises' pending claims against the Rice defendants, it nevertheless contained a Mother Hubbard clause stating that "[a]ll relief requested and not herein granted is denied."

The Harrises assert that they received notice of the order by a postcard that described the order as an interlocutory summary judgment, but the postcard is not in our record. The record does not reflect whether the parties obtained a copy of the order after it was signed. It appears that the district clerk followed her usual procedure of notifying the parties by

---

7. 988 S.W.2d 415 (op. on reh'g).

8. *See* Tex.R.App. P. 26.1 (appellate time limits).

9. 43 Tex. Sup.Ct. J. 94, 96 (Nov. 12, 1999).

postcard in lieu of providing copies of the order.

The district court apparently did not consider the summary judgment order to be final; forty-six days after it was signed, the court generated a form order setting the case for trial the next year. The Harrises, too, appear to have believed the summary judgment to be interlocutory; two weeks after the order issued setting the case for trial, the Harrises obtained what was captioned a "Final Default Judgment" against the Rice defendants. Twenty-five days later the Harrises noticed their appeal from Harbour Title's summary judgment.

If Harbour Title's summary judgment did not dispose of the Harrises' claims against the Rice defendants, and the default judgment against those defendants was the final order in the case, then the Harrises' appeal was timely. But following *Mafrige*, as it had done in *Lehmann*, the court of appeals concluded that the summary judgment order was final and therefore dismissed the appeal as not having been timely perfected. We granted the Harrises' petition for review and consolidated it with *Lehmann* for argument and decision.[10]

## II

### A

▮ Though its origins are obscure and its rationale has varied over time,[11] the general rule, with a few mostly statutory exceptions, is that an appeal may be taken only from a final judgment.[12] A judgment is final for purposes of appeal if it disposes of all pending parties and claims in the record, except as necessary to carry out the decree.[13] (An order that does not dispose of all pending parties and claims may also be final for purposes of appeal in some instances, such as orders that resolve certain discrete issues in some probate[14] and receiverships[15] cases, but we exclude those cases from consideration here. Nor do we consider when a judgment may be final for purposes other than appeal, such as claim and issue preclusion.[16]) Because the law does not require that a final judgment be in any particular form, whether a judicial decree is a final judgment must be determined from its language and the record in the case. Since timely perfecting appeal (as well as filing certain post-judgment motions and requests) hangs on a party's making this determination correctly, certainty is crucial.

From the beginning, however, certainty in determining whether a judgment is final has proved elusive. What has vexed courts in this State and elsewhere is this: must a final judgment dispose of all parties and claims specifically, or may it do so by general language or even by inference? If a specific disposition of each party and

10. 43 Tex. Sup.Ct. J. 94, 96 (Nov. 12, 1999).

11. *See* Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice & Procedure §§ 3906–3907 (1992).

12. *See, e.g., North East Indep. Sch. Dist. v. Aldridge*, 400 S.W.2d 893, 895 (Tex.1966); *Gulf C. & S. F. Ry. v. Fort Worth & N. O. Ry.*, 68 Tex. 98, 2 S.W. 199, 200 (1886), *op. on reh'g*, 68 Tex. 98, 3 S.W. 564 (1887); see Tex. Const. art. V, § 3–b (direct appeals to the Supreme Court); Tex. Civ. Prac. & Rem.Code §§ 15.003(c) (interlocutory joinder and intervention appeals), 51.012 (court of appeals jurisdiction), 51.014 (interlocutory appeals); Tex. Gov't Code §§ 22.001(c) (direct appeals), 22.225(d) (interlocutory appeal to the Supreme Court).

13. *See Jack B. Anglin Co., v. Tipps*, 842 S.W.2d 266, 272 (Tex.1992); *Linn v. Arambould*, 55 Tex. 611, 617–18 (1881) (surveying several tests for determining when a judgment is final). *See generally* 49 C.J.S. *Judgments* § 11 (1947); 46 Am.Jur.2d *Judgments* § 200–206 (1994).

14. *Crowson v. Wakeham*, 897 S.W.2d 779, 783 (Tex.1995).

15. *Huston v. Federal Deposit Ins. Corp.*, 800 S.W.2d 845, 847 (Tex.1990).

16. *See Street v. Second Court of Appeals*, 756 S.W.2d 299, 301 (Tex.1988).

claim is strictly required, a judgment apparently intended by the parties and the trial court to be final and appealable may not be. An appeal from such a judgment must be dismissed or at least abated, resulting in delay and a waste of the courts' and the parties' resources. More importantly, if a judgment intended to be final did not meet the strict requirements, then the case would remain open, allowing the possibility of further proceedings and appeal years later. On the other hand, if a judgment may dispose of all parties and claims by general language or inference, a party or trial court may think that a judgment is interlocutory, only to be told later by the appellate court after the time for appeal has passed that the judgment was final. A party who is uncertain whether a judgment is final must err on the side of appealing or risk losing the right to appeal.

In 1881, after struggling with these problems for many years,[17] we attempted to resolve them in the case of *Linn v. Arambould.*[18] There we stated that a final judgment after trial must dispose of the issues "intrinsically, and not inferentially."[19] That is, specificity was strictly required. The results of this rule were predictable. Appellate courts frequently declared shabbily drafted judgments interlocutory even though the trial courts and the parties had obviously intended for them to be final.[20] Confused parties were spending time and money attempting to appeal from possibly final judgments, only to have the appellate courts dismiss the appeals for want of jurisdiction.[21] As this Court later reflected on *Arambould*'s intrinsic-disposition requirement for finality:

> By its application most judgments easily became black or white—final or interlocutory; but all too often judgments which were obviously intended to be final were being held interlocutory because of careless draftsmanship. The rule had to be changed to accommodate oversight or carelessness.[22]

In 1896 we altered course. In *Rackley v. Fowlkes,*[23] the plaintiff had, in a prior suit, sued for title to real property and for rent for the four years the property was in the defendant's possession, but at trial he offered no evidence of the amount of rent due until after the evidence was closed, and because the offer was late the court refused to hear it. The court in that suit rendered judgment awarding title to the plaintiff without mentioning his claim for rent. When the plaintiff filed a second suit for the rent, the defendant asserted res judicata in defense. The trial court rendered judgment for the plaintiff, concluding that the rent claim had not been adjudicated in the prior suit, and the court of civil appeals affirmed. We reversed the judgments of the lower courts, not because the rent claim should have been adjudicat-

---

17. See *Hanks v. Thompson,* 5 Tex. 6, 8 (1849) (defining a final judgment as awarding the judicial consequences which the law attaches to the facts and determining the subject matter of the controversy between the parties); *accord West v. Bagby,* 12 Tex. 34 (1854). See also *Fitzgerald v. Fitzgerald,* 21 Tex. 415 (1858); *Hancock v. Metz,* 7 Tex. 177 (1851) (both holding that a judgment for the defendant for costs did not constitute a final judgment); *Warren v. Shuman,* 5 Tex. 441, 450 (Tex.1849) (finding that a judgment that awards costs without disposing of the subject matter of the controversy is not a final judgment). See generally 31 JEREMY C. WICKER, TEXAS PRACTICE, CIVIL TRIAL & APPELLATE PROCEDURE § 506, at 289–311 (1985) (chronicling, in depth, the challenges of distinguishing between final and interlocutory judgments in various contexts beginning in the mid–19th century).

18. 55 Tex. 611 (1881).

19. *Id.* at 619.

20. See *Aldridge,* 400 S.W.2d at 895.

21. See, e.g., *East & West Tex. Lumber Co. v. Williams,* 71 Tex. 444, 9 S.W. 436 (1888); *Hill v. Templeton,* 25 S.W. 652 (Tex.Civ.App. 1894); *Mills v. Paul,* 4 Tex.Civ.App. 503, 23 S.W. 395 (1893).

22. *Aldridge,* 400 S.W.2d at 895.

23. 89 Tex. 613, 36 S.W. 77, 78 (1896).

ed in the first suit, but because it *was* adjudicated:

> The proposition seems to be sound in principle and well supported by authority that where the pleadings and judgment in evidence show that the pleadings upon which the trial was had put in issue plaintiff's right to recover upon two causes of action, and the judgment awards him a recovery upon one, but is silent as to the other, such judgment is prima facie an adjudication that he was not entitled to recover upon such other cause. This liberal construction of the judgment against the party who sought to recover therein is supported by the presumption that the court performed the duty devolved upon it upon the submission of the cause by disposing of every issue presented by the pleadings so as to render its judgment final and conclusive of the litigation, and by the further fact that the policy of the law favors the speedy settlement of litigation and opposes the harassing of the defendant with two suits for the same cause.[24]

Three years later we used the rule stated for purposes of res judicata in *Rackley* to determine whether a judgment was final for purposes of appeal. In *Davies v. Thomson*,[25] the plaintiffs sued for money and an interest in real property as their share of a joint venture. The trial court rendered judgment on a jury verdict awarding the plaintiffs money without mentioning the claim for an interest in real property. We held that the judgment disposed of both claims was therefore final and appealable.[26]

Neither *Rackley* nor *Davies* mentioned *Arambould* or attempted to reconcile their results with the rule in that case, thereby generating confusion in the appellate courts over how to determine finality in cases involving cross-claims and counterclaims. Some courts treated judgments that merely implicitly disposed of all claims as final, while other courts required that final judgments expressly adjudicate each claim.[27] In 1913, the Court resolved the conflict in *Trammell v. Rosen*,[28] rejecting the rule stated in *Arambould*. The plaintiff in *Trammell* sued on a promissory note secured by property that the defendant and his wife claimed was their homestead. The couple counterclaimed to establish their homestead claim and for damages for wrongful sequestration. The trial court instructed a verdict for the plaintiff on his claim and against the defendants on their counterclaim. The judgment recited the verdict and awarded damages to the plaintiff but did not mention the counterclaim.[29] Citing *Rackley*, the Court concluded that the judgment was final, reasoning that by granting the plaintiff's claim the trial court implicitly but necessarily denied the defendants' counterclaim.[30] Still, the Court strongly encouraged courts to expressly address each claim and party in final judgments to avoid further confusion:

> We feel constrained to hold that the judgment of the trial court, although irregular and imperfect in form, is sufficient to support the appeal. However, we feel impelled to say, also, that we think that, as a matter of practice, and to avoid confusion, every final judgment should plainly, explicitly, and specifically dispose of each and every party to the cause, and of each and every issue therein presented by the pleadings.[31]

---

24. *Id.* at 78 (citations omitted).

25. 92 Tex. 391, 49 S.W. 215 (1899).

26. *Id.* at 217.

27. *See Trammell v. Rosen*, 106 Tex. 132, 157 S.W. 1161, 1162 (1913) (listing the various appellate courts subscribing to each school of construction).

28. *Id.*

29. *Id.* at 1161.

30. *Id.* at 1161–1163.

31. *Id.* at 1163. *See also Burton Lingo Co. v. First Baptist Church*, 222 S.W. 203, 204 (Tex. Comm'n App.1920, holding approved) (citing

Two cases decided after *Trammell* suggest that the entire record should be considered in determining whether a post-trial judgment is final. In *Hargrove v. Insurance Investment Corp.*, we held that a judgment for the plaintiff was final when "considered as a whole in the light of the entire record".[32] Similarly, in *Ferguson v. Ferguson*, we held that a judgment awarding the plaintiff recovery on some of her claims while silent as to others was final, stating that "[i]n arriving at whether or not a judgment is final, the pleadings and evidence must also be taken into consideration".[33] Neither case should be read to deviate from the presumptive rule of *Trammell*. We did not hold in either case that the record could be used to show that a post-trial judgment final on its face was really not final. In two other cases during the same time period we did not mention the record in applying *Trammell*.[34]

In 1966, we reaffirmed *Rackley, Davies,* and *Trammell* in *North East Independent School District v. Aldridge*.[35] The school district sued Aldridge for breach of contract, and he asserted in his defense that he had contracted only as an agent for his principal. He also brought a third-party action against his principal, alleging that the principal was responsible for any damages to which the school district might be entitled. The trial court granted a partial summary judgment holding Aldridge personally liable to the district and directed that the case proceed to trial to determine the amount of damages to be awarded. The parties then stipulated to the amount of damages, and the trial court rendered judgment for the district against Aldridge based on the stipulation. The judgment did not mention Aldridge's third-party action against his principal. The court of civil appeals dismissed Aldridge's appeal, holding that the trial court's judgment was not final.[36] We held that the judgment against Aldridge disposed of the third-party action and was final for purposes of appeal. After reviewing the courts' historical difficulties in making finality determinations, we stated the following rule

for determining, in most instances, whether judgments in which parties and issues made by the pleadings are not disposed of in express language are, nevertheless, final for appeal purposes. When a judgment, not intrinsically interlocutory in character, is rendered and entered in a case regularly set for conventional trial on the merits, no order for a separate trial of issues having been entered ..., it will be presumed for appeal purposes that the Court intended to, and did, dispose of all parties legally before it and of all issues made by the pleadings between such parties.[37]

We added: "Of course, the problem [of determining whether judgments are final] can be eliminated entirely by a careful drafting of judgments to conform to the pleadings or by inclusion in judgments of a simple statement that all relief not expressly granted is denied." [38] Inclusion of a catch-all statement—which we later denominated a "Mother Hubbard" clause [39]— would make clear that a post-trial judgment on the merits, presumed to have disposed of all claims, did indeed do so.

*Trammell* for support of its presumption that the judgment disposed of a claim).

**32.** 142 Tex. 111, 176 S.W.2d 744, 746 (1944).

**33.** 161 Tex. 184, 338 S.W.2d 945, 947 (1960).

**34.** *Gamble v. Banneyer,* 137 Tex. 7, 151 S.W.2d 586 (1941); *Vance v. Wilson,* 382 S.W.2d 107 (Tex.1964) (res judicata).

**35.** 400 S.W.2d 893 (Tex.1966).

**36.** *North East Indep. Sch. Dist. v. Aldridge,* 392 S.W.2d 607 (Tex.Civ.App.—San Antonio 1965), *rev'd and remanded,* 400 S.W.2d 893 (Tex.1966).

**37.** 400 S.W.2d at 897–898.

**38.** *Id.* at 898.

**39.** *Teer v. Duddlesten,* 664 S.W.2d 702, 704 (Tex.1984).

## B

The presumption that a judgment rendered after a conventional trial on the merits is final and appealable has proved fairly workable for nearly a century, but we have never thought that it could be applied in other circumstances, as we first explained nearly sixty years ago. In *Davis v. McCray Refrigerator Sales Corp.*,[40] the plaintiff sued for the unpaid balance of the purchase price of a refrigerator, and the defendant counterclaimed for cancellation of the debt and for damages for payments already made and lost merchandise due to improper refrigeration. The defendant also filed a plea in abatement on the grounds that the plaintiff was a foreign corporation not licensed to do business in Texas and therefore not entitled to sue in state court. The trial court deferred ruling on the defendant's plea until after the case was tried on the merits. After the jury returned a verdict, the trial court rendered judgment both that the plaintiff's claim be dismissed and that the plaintiff take nothing.[41] The only basis the trial court had for dismissal was the defendant's plea in abatement, while the only basis for rendering a take-nothing judgment was plaintiff's failure of proof at trial. The judgment did not mention the defendant's counterclaim. The court of civil appeals rejected the defendant's argument that the judgment was interlocutory and reversed and rendered judgment for the plaintiff.[42] This Court reversed and dismissed the appeal. Citing *Trammell*, the Court acknowledged that while a final judgment need not expressly dispose of each issue so long as other provisions of the judgment necessarily imply that the unmentioned issues have been disposed of, a dismissal of the plaintiff's suit did not necessarily imply a disposal of the defendant's cross-action.[43] The Court explained:

> [I]f the court had intended to merely sustain the plea in abatement and dismiss plaintiff's suit, and had intended to retain the defendant's cross-action for further consideration, it would have entered the very judgment that was entered in this case. The mere failure of the judgment to refer to defendant's cross-action was not sufficient in itself to raise an inference that it was thereby intended to dispose of the cross-action.[44]

Although the judgment did not "merely" sustain the plea in abatement but also decreed that the plaintiff take nothing, the inclusion of the dismissal in the judgment as the first basis for decision was enough to make *Trammell*'s presumptive finality rule inapplicable.

*Davis* may have departed too far from *Trammell*. The trial court's decree following a jury trial on the merits that the plaintiff take nothing without mention of the defendant's counterclaim should perhaps have been presumed to deny all relief, despite the alternative ruling that the plaintiff's claim should be dismissed. But regardless of *Davis*'s unusual circumstances, the case makes the point, which we expressly acknowledged in *Aldridge*, that "[i]t will not be presumed that a judgment dismissing a plaintiff's suit on nonsuit, plea to the jurisdiction, plea in abatement, for want of prosecution, etc., also disposed of the issues in an independent cross-action."[45]

We have since held that "etc." includes default judgments and summary judgments.[46] The reason for not applying a presumption in any of these circumstances

40. 136 Tex. 296, 150 S.W.2d 377 (1941).

41. *McCray Refrigerator Sales Corp. v. Davis*, 140 S.W.2d 477, 478 (Tex.Civ.App.—Fort Worth 1940), *rev'd*, 136 Tex. 296, 150 S.W.2d 377 (1941).

42. *Id.*

43. 150 S.W.2d at 378.

44. *Id.*

45. *Aldridge*, 400 S.W.2d at 897.

46. See, e.g., *Houston Health Clubs, Inc. v. First Court of Appeals*, 722 S.W.2d 692 (Tex. 1986), and the cases cited therein.

is that the ordinary expectation that supports the presumption that a judgment rendered after a conventional trial on the merits will comprehend all claims simply does not exist when some form of judgment is rendered without such a trial. On the contrary, it is quite possible, perhaps even probable these days in cases involving multiple parties and claims, that any judgment rendered prior to a full-blown trial is intended to dispose of only part of the case. Accordingly, the finality of the judgment must be determined without the benefit of any presumption.

 A judgment that finally disposes of all remaining parties and claims, based on the record in the case, is final, regardless of its language.[47] A judgment that actually disposes of every remaining issue in a case is not interlocutory merely because it recites that it is partial or refers to only some of the parties or claims. Thus, if a court has dismissed all of the claims in a case but one, an order determining the last claim is final.[48] This is settled law in Texas, and while there have been proposals to change it by rule, proposals that are currently pending consideration by this Court's Advisory Committee, we are not inclined to depart from it here. The language of an order or judgment cannot make it interlocutory when, in fact, on the record, it is a final disposition of the case.

 But the language of an order or judgment *can* make it final, even though it should have been interlocutory, if that language expressly disposes of all claims and all parties. It is not enough, of course, that the order or judgment merely use the word "final". The intent to finally dispose of the case must be unequivocally expressed in the words of the order itself. But if that intent is clear from the order, then the order is final and appealable, even though the record does not provide an adequate basis for rendition of judgment. So, for example, if a defendant moves for summary judgment on only one of four claims asserted by the plaintiff, but the trial court renders judgment that the plaintiff take nothing on all claims asserted, the judgment is final—erroneous, but final.[49] A judgment that grants more relief than a party is entitled to is subject to reversal, but it is not, for that reason alone, interlocutory.[50]

Texas appellate courts, this Court included, have had difficulty determining when a judgment is final on its face—by its own express terms, in other words—even though it should not have been because no sufficient basis for rendering a final judgment was presented. In *Schlipf v. Exxon Corp.*,[51] the plaintiffs sued for gas royalties and prejudgment interest, and moved for summary judgment only on the royalties issue. Neither the defendant nor an intervenor moved for summary judgment against the plaintiffs. The trial court granted the plaintiffs' motion, awarding the royalties claimed, but denied prejudgment interest. The judgment recited:

> the relief herein granted Plaintiffs, . . . is in satisfaction of all of their claims and causes of action . . . and all claims and/or causes of action herein asserted by all parties herein and not herein granted are hereby in all things denied and concluded. . . .[52]

---

47. *Farmer v. Ben E. Keith Co.,* 907 S.W.2d 495, 496 (Tex.1995) (per curiam); *H.B. Zachry Co. v. Thibodeaux,* 364 S.W.2d 192, 193 (Tex.1963) (per curiam); *McEwen v. Harrison,* 162 Tex. 125, 345 S.W.2d 706, 707 (1961).

48. *Farmer,* 907 S.W.2d at 496; *H.B. Zachry Co.,* 364 S.W.2d at 193; *McEwen,* 345 S.W.2d at 707.

49. *Young v. Hodde,* 682 S.W.2d 236 (Tex. 1984) (per curiam); *Chessher v. Southwestern Bell Tel. Co.,* 658 S.W.2d 563, 564 (Tex.1983) (per curiam).

50. Id.

51. 644 S.W.2d 453 (Tex.1982) (per curiam).

52. *Id.* at 454.

We held that this language conclusively disposed of all parties and issues, as it clearly did, although in reaching this conclusion, we reiterated our observation in *Aldridge* that the finality of a judgment would be made clear "by inclusion ... of a simple statement that all relief not expressly granted is denied." [53] This observation, appropriate in *Aldridge* in reference to judgments after a conventional trial on the merits, was misleading in *Schlipf,* because the only "relief" properly under consideration when the order issued was that raised by the motion for summary judgment [54]—the plaintiffs' entitlement to royalties. After a full trial on the merits, the statement in a judgment that all relief not requested is denied signifies finality; there is no expectation that the court tried only part of the case, absent an order for severance or separate trials. But after a motion for partial summary judgment, the same statement in a judgment is ambiguous. It may refer only to the motion on which the trial court is ruling, not to all claims of all parties, and not even to other claims of the movant.

Two years later, in *Teer v. Duddlesten,* we emphasized that the *Aldridge* language—all relief not expressly granted is denied—which we termed for the first time a "Mother Hubbard" clause, has no place in partial summary judgments because, by definition, those proceedings do not address all of the facts and issues in a case.[55] A Mother Hubbard clause, we said, could not convert a partial summary judgment into a final order.[56] Following *Teer,* most courts of appeals held that a Mother Hubbard clause could not make final a judgment rendered without a full trial,[57] although other courts reached the contrary conclusion.[58]

We attempted to clarify matters in *Mafrige v. Ross.*[59] There, two plaintiffs sued some twelve defendants for malicious prosecution, slander, libel, conspiracy, and negligence.[60] No party other than the plaintiffs asserted any claims. The defendants, some individually and some in groups, filed a total of eight summary judgment motions, some directed against one of the plaintiffs and some against both.[61] Only one motion addressed both of the plaintiffs and all of the claims asserted;[62] even together, the other seven motions did not address both plaintiffs and all claims.[63] The trial court granted all eight motions with eight separate orders, one for each motion.[64] Each order stated that the

53. *Id.*

54. *See New York Underwriters Ins. Co. v. Sanchez,* 799 S.W.2d 677, 678 (Tex.1990) (per curiam); *Young v. Hodde,* 682 S.W.2d 236 (Tex.1984) (per curiam); *Chessher v. Southwestern Bell Tel. Co.,* 658 S.W.2d 563, 564 (Tex.1983) (per curiam).

55. *Teer v. Duddlesten,* 664 S.W.2d 702, 704 (Tex.1984).

56. *Id.*

57. *E.g., Bethurum v. Holland,* 771 S.W.2d 719 (Tex.App.—Amarillo 1989, no writ); *Sakser v. Fitze,* 708 S.W.2d 40, 42 (Tex.App.—Dallas 1986, no writ) (declaring that a Mother Hubbard clause in an order does not convert an intrinsically interlocutory partial summary judgment into a final judgment).

58. *E.g., Georgetown Assoc., Ltd. v. Home Fed. Sav. & Loan Ass'n,* 795 S.W.2d 252, 253 (Tex.

App.—Houston [14th Dist.] 1990, writ dism'd w.o.j.); *Hodde v. Young,* 672 S.W.2d 45, 47 (Tex.App.—Houston [14th Dist.] ) (holding that a judgment was final and appealable because it contained a Mother Hubbard clause), *writ ref'd, n.r.e.,* 682 S.W.2d 236 (Tex. 1984) (per curiam) (noting that the erroneous rendition of a final judgment is not fundamental error).

59. 866 S.W.2d 590 (Tex.1993).

60. *Id.* at 590.

61. *Id.*

62. *Ross v. Arkwright Mut. Ins. Co.,* 834 S.W.2d 385, 388–389 (Tex.App.—Houston [14th Dist.] 1992), *rev'd sub nom. Mafrige v. Ross,* 866 S.W.2d 590 (Tex.1993).

63. *Id.*

64. 866 S.W.2d at 590–591.

plaintiff or plaintiffs, depending on whether the motion had been directed at one or both, were to take nothing against the movant or movants.[65] Thus, taken together, the eight orders provided that both of the plaintiffs were to take nothing against all of the defendants. On the plaintiffs' appeal, however, the court of appeals held that there was not a final judgment because most of the defendants had not moved for summary judgment on all claims by both plaintiffs and thus were not entitled to a final judgment, and the "take nothing" language of the orders did not make them final.[66] The court also held that if the orders had contained Mother Hubbard clauses they would have been final under this Court's precedents, although the court of appeals did not agree that that would have been the proper result.[67]

We reversed, holding that the "take nothing" language in the eight summary judgment orders disposed of all claims asserted by both plaintiffs against each of the defendants and thus constituted a final judgment. We then explained:

> If a summary judgment order appears to be final, as evidenced by the inclusion of language purporting to dispose of all claims or parties, the judgment should be treated as final for purposes of appeal. If the judgment grants more relief than requested, it should be reversed and remanded, but not dismissed. We think this rule to be practical in application and effect; litigants should be able to recognize a judgment which on its face purports to be final, and courts should be able to treat such a

judgment as final for purposes of appeal.[68]

As examples of "language purporting to dispose of all claims or parties," we gave not only the "take nothing" language of the orders before us, and the statement that summary judgment is granted as to all claims asserted, but also the standard Mother Hubbard clause-that all relief not expressly granted is denied.[69] In so doing we revived the ambiguity created in *Schlipf* that *Teer* had tried to end.

The ambiguity has persisted in our decisions. In *Martinez v. Humble Sand & Gravel, Inc.*,[70] we held that the inclusion of a Mother Hubbard clause in an order did not necessarily make it final. There, some but not all of the defendants moved for summary judgment, and the trial court granted the motions, dismissing the plaintiff's cause of action against "those Defendants", but also ordering that summary judgment was proper "as to all remaining Defendants", thereby suggesting that the court intended to render a final summary judgment.[71] However, the trial court subsequently severed the summary judgment by order inviting other defendants to move on the same grounds.[72] Although this order contained a Mother Hubbard clause, we held that judgment had not been rendered for the non-moving defendants.[73]

But in *Bandera Electric Cooperative, Inc. v. Gilchrist*,[74] we held that a Mother Hubbard clause in a summary judgment made it final. There the plaintiff moved for summary judgment on its claims without mentioning the defendant's counterclaims.[75] The defendant did not move for summary judgment. The trial court

---

65. *Id.*

66. *Ross,* 834 S.W.2d at 394.

67. *Id.* at 393–395.

68. *Mafrige,* 866 S.W.2d at 592; *accord Springer v. Spruiell,* 866 S.W.2d 592 (Tex.1993) (per curiam).

69. *Id.* at 590 n. 1.

70. 875 S.W.2d 311 (Tex.1994) (per curiam).

71. *Id.* at 313.

72. *Id.*

73. *Id.*

74. 946 S.W.2d 336 (Tex.1997) (per curiam).

75. *Id.* at 337.

granted the plaintiff's motion by order that included a Mother Hubbard clause. We concluded that the order was final, albeit erroneous.[76] We attempted to explain that our ruling was consistent with *Martinez* because the conflict in the orders involved in that case showed that they were not final even though "a Mother Hubbard clause ... would have created a final and appealable judgment".[77] Besides its obvious inadequacy in explaining the result in *Martinez*, this explanation suggested that a Mother Hubbard clause would by itself make any summary judgment final, contrary to our holding in *Teer*.

Determining the significance of omitting a Mother Hubbard clause in an order has been no easier. In *Park Place Hosp. v. Estate of Milo*, we suggested that the absence of a Mother Hubbard clause indicated that a summary judgment was intended to be interlocutory.[78] There, the trial court granted summary judgment for three of five remaining defendants and later severed the judgment from the case. We concluded that the judgment did not become final for purposes of appeal until it was severed, in part based on the omission of a Mother Hubbard clause. But in two other cases we held that the omission of a Mother Hubbard clause did not make a summary judgment interlocutory that otherwise appeared final. In *Continental Airlines, Inc. v. Kiefer*,[79] the defendant moved for summary judgment "on all claims brought by" the plaintiffs. After the motion was filed, but before it was heard and decided, the plaintiffs amended their pleadings to add additional claims. The defendant did not amend its motion to address these later claims. The trial court granted what it entitled a "final summary judgment", dismissing the plaintiffs' cause of action—"cause", singular—although multiple causes of action had been asserted. We held that the judgment was final, explaining as follows:

> Finality "must be resolved by a determination of the intention of the court as gathered from the language of the decree and the record as a whole, aided on occasion by the conduct of the parties." 5 RAY W. McDONALD, TEXAS CIVIL PRACTICE § 27:4[a], at 7 (John S. Covell, ed., 1992 ed.); *see Ferguson v. Ferguson*, 161 Tex. 184, 338 S.W.2d 945, 947 (1960). In the circumstances described here, we think the district court intended to render a final, appealable judgment.... Neither the parties nor the court of appeals have suggested that the judgment was not final.[80]

The judgment did not include a Mother Hubbard clause, but we did not find its omission significant. We reached a similar conclusion in *Inglish v. Union State Bank*.[81]

In sum, our opinions have not been entirely consistent on whether the inclusion or omission of a Mother Hubbard clause does or does not indicate that a summary judgment is final for purposes of appeal. This ambivalence has resulted in considerable confusion in the courts of appeals.[82]

### III

#### A

■ Much confusion can be dispelled by holding, as we now do, that the inclusion of a Mother Hubbard clause—by which we mean the statement, "all relief not granted is denied", or essentially those words—

---

**76.** *Id.*

**77.** *Id.* at 337 n. 2.

**78.** 909 S.W.2d 508, 510 (Tex.1995).

**79.** 920 S.W.2d 274, 276 (Tex.1996).

**80.** *Id.* at 277.

**81.** 945 S.W.2d 810 (Tex.1997) (per curiam).

**82.** *See, e.g.,* Elaine A. Carlson & Karlene S. Dunn, *Navigating Procedural Minefields: Nuances in Determining Finality of Judgments, Plenary Power, and Appealability*, 41 So. TEX. L.REV. 953, 969–1001 (2000); William J. Cornelius & David F. Johnson, *Tricks, Traps, and Snares in Appealing a Summary Judgment in Texas*, 50 Baylor L.Rev. 813, 825–835 (1998).

does not indicate that a judgment rendered without a conventional trial is final for purposes of appeal. We overrule *Maffrige* to the extent it states otherwise. If there has been a full trial on the merits either to the bench or before a jury, the language indicates the court's intention to finally dispose of the entire matter, assuming that a separate or bifurcated trial is not ordered. But in an order on an interlocutory motion, such as a motion for partial summary judgment, the language is ambiguous. It may mean only that the relief requested *in the motion*—not all the relief requested by anyone in the case—and not granted by the order is denied. The clause may also have no intended meaning at all, having been inserted for no other reason than that it appears in a form book or resides on a word processor. For whatever reason, the standard Mother Hubbard clause is used in interlocutory orders so frequently that it cannot be taken as any indication of finality.

As we have already explained, an order can be a final judgment for appeal purposes even though it does not purport to be if it actually disposes of all claims still pending in the case. Thus, an order that grants a motion for partial summary judgment is final if in fact it disposes of the only remaining issue and party in the case, even if the order does not say that it is final, indeed, even if it says it is not final. (Again, we do not consider here the various kinds of cases in which there may be more than one final judgment for purposes of appeal.) Also, an order can be final and appealable when it should not be. For example, an order granting a motion for summary judgment that addressed all of the plaintiff's claims when it was filed but

did not address claims timely added by amendment after the motion was filed may state unequivocally that final judgment is rendered that the plaintiff take nothing by his suit. Granting more relief than the movant is entitled to makes the order reversible, but not interlocutory.[83]

While the present problems in determining whether an order is a final judgment should be lessened significantly by denying the standard Mother Hubbard clause of any indicia of finality in any order not issued after a conventional trial, the difficulty in determining what does make an order final and appealable remains. One solution would be stricter requirements for the form of a final judgment. Rule 58 of the Federal Rules of Civil Procedure takes this approach by requiring that to be final a judgment must "be set forth on a separate document" and be entered by the clerk on the civil docket. The separate-document requirement was added to the rule in 1963 to remove uncertainty over whether a trial judge's opinion or order constituted a final judgment.[84] Rule 58, with its dual requirements, " 'enhances certainty by insisting on formality.' " [85] The United States Supreme Court has insisted on strict compliance with the rule, quoting Professor Moore's observation that the rule

> " 'would be subject to criticism for its formalism were it not for the fact that something like this was needed to make certain when a judgment becomes effective, which has a most important bearing, inter alia, on the time for appeal and the making of post-judgment motions that go to the finality of the judgment

**83.** *See Young v. Hodde,* 682 S.W.2d 236, 237 (Tex.1984) (per curiam); *Chessher v. Southwestern Bell Tel. Co.,* 658 S.W.2d 563, 564 (Tex.1983) (per curiam); *Schlipf v. Exxon Corp.,* 644 S.W.2d 453 (Tex.1983) (per curiam).

**84.** *Bankers Trust Co. v. Mallis,* 435 U.S. 381, 384–385, 98 S.Ct. 1117, 55 L.Ed.2d 357 (1978).

**85.** CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE § 2781 (2d ed.1995) (quoting Benjamin Kaplan, *Amendments of the Federal Rules of Civil Procedure, 1961–1963,* 77 HARV. L.REV. 801, 831 (1964)).

for purposes of appeal.' "[86] The one recognized exception is a party's failure to object.[87]

The price of certainty, however, as federal rulemakers have come to realize, is that in many cases the failure to comply with Rule 58 means that no final judgment was ever rendered, and the time for appeal remains open.[88] A proposed amendment to Rule 58 would provide that if final judgment is not rendered on a separate document, it is deemed rendered on the sixtieth day after the clerk's entry on the civil docket.[89] While this proposal helps ensure that every case will be closed, it also makes it more likely that a party will not be aware that the time for appeal is running—the problem the 1963 amendment to Rule 58 was meant to cure—because he does not know of the clerk's entry on the civil docket.

There may be other solutions to these dilemmas which could be implemented by changes in our own rules, and this Court's Advisory Committee is presently studying the issues. But we do not write rules by opinion.[90] We must decide what Texas law requires for finality given the present rules.

■■■■ In the past we have tried to ensure that the right to appeal is not lost by an overly technical application of the law.[91] Fundamentally, this principle should guide in determining whether an order is final. Simplicity and certainty in appellate procedure are nowhere more important than in determining the time for perfecting appeal. From the cases we have reviewed here, we conclude that when there has not been a conventional trial on the merits, an order or judgment is not final for purposes of appeal unless it actually disposes of every pending claim and party or unless it clearly and unequivocally states that it finally disposes of all claims and all parties. An order that adjudicates only the plaintiff's claims against the defendant does not adjudicate a counterclaim, cross-claim, or third party claim, nor does an order adjudicating claims like the latter dispose of the plaintiff's claims. An order that disposes of claims by only one of multiple plaintiffs or against one of multiple defendants does not adjudicate claims by or against other parties. An order does not dispose of all claims and all parties merely because it is entitled "final", or because the word "final" appears elsewhere in the order, or even because it awards costs. Nor does an order completely dispose of a case merely because it states that it is appealable, since even interlocutory orders may sometimes be appealable. Rather, there must be some other clear indication that the trial court intended the order to completely dispose of the entire case. Language that the plaintiff take nothing by his claims in the case, or that the case is dismissed, shows finality if there are no other claims by other parties; but language that "plaintiff take nothing by his claims against X" when there is more than one defendant or other parties in the case does not indicate finality.

To determine whether an order disposes of all pending claims and parties, it may of course be necessary for the appellate court

**86.** *United States v. Indrelunas*, 411 U.S. 216, 220–221, 93 S.Ct. 1562, 36 L.Ed.2d 202 (1973).

**87.** *Bankers Trust*, 435 U.S. at 387–388, 98 S.Ct. 1117.

**88.** Committee on Rules of Practice & Procedure of the Judicial Conference of the United States, Preliminary Draft of Proposed Amendments to the Federal Rules of Appellate, Bankruptcy, Civil, and Criminal Procedure 100–114 (Aug. 2000).

**89.** Id.

**90.** *State Dept. of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 241 (Tex.1992); *Alvarado v. Farah Mfg. Co.*, 830 S.W.2d 911, 915 (Tex.1992).

**91.** *Verburgt v. Dorner*, 959 S.W.2d 615, 616–617 (Tex.1997).

to look to the record in the case. Thus, in the example just given, if the record reveals that there is only one plaintiff and only one defendant, X, the order is final, but if the record reveals the existence of parties or claims not mentioned in the order, the order is not final. On the other hand, an order that expressly disposes of the entire case is not interlocutory merely because the record fails to show an adequate motion or other legal basis for the disposition. The record may help illumine whether an order is made final by its own language, so that an order that all parties appear to have treated as final may be final despite some vagueness in the order itself, while an order that some party should not reasonably have regarded as final may not be final despite language that might indicate otherwise.

One may argue after *Aldridge* and *Mafrige* that it is perilous to suggest any particular language that will make a judgment final and appealable because that language can then be inserted in orders intended to be interlocutory. But to leave in doubt the degree of clarity required for finality creates its own problems. The Mother Hubbard clause proved to give no indication of finality not just because it found its way into every kind of order, but because it was inherently ambiguous, as we have explained. A statement like, "This judgment finally disposes of all parties and all claims and is appealable", would leave no doubt about the court's intention. An order must be read in light of the importance of preserving a party's right to appeal. If the appellate court is uncertain about the intent of the order, it can abate the appeal to permit clarification by the trial court.[92] But if the language of the order is clear and unequivocal, it must be given effect despite any other indications that one or more parties did not intend for the judgment to be final. An express adjudication of all parties and claims in a case is not interlocutory merely

because the record does not afford a legal basis for the adjudication. In those circumstances, the order must be appealed and reversed.

**B**

▮▮▮▮ Nothing in the order in *Lehmann* indicates that it is a final judgment, and it did not dispose of all pending claims and parties. The order in *Harris* states that plaintiffs take nothing as to "one of the defendants", but that language does not suggest that all of the plaintiffs' claims were denied. As the order recites and as the record demonstrates, the defendant named in the order was not the only defendant remaining in the case. Thus, we conclude that a final and appealable judgment was not rendered in either case.

We are concerned that in neither case were the non-movants provided a copy of the court's signed order but were merely sent notice by postcard that an order had been signed. The Rules of Civil Procedure do not require clerks to send all parties copies of all orders, only final orders.[93] Nevertheless, the practice of courts in some counties is to require that a party seeking an order provide copies and addressed, postage-paid envelopes for all other parties. The Court's Advisory Committee should consider whether the rules should require that all parties be given copies of all orders signed in a case.

**IV**

We must respond briefly to the concurring opinion. It would hold that no "type of conclusory finality language can ever be read to grant more relief than requested by the parties."[94] This goes too far. The legitimate problem with Mother Hubbard clauses, which we failed to appreciate in *Mafrige,* is that they are ambiguous: one cannot be sure whether the denial of all relief other than what has been expressly

---

**92.** Tex.R.App. P. 27.2.

**93.** *See* Tex.R. Civ. P. 306a(3).

**94.** *Post* at 217.

granted is limited to relief requested in a motion or extends to all relief requested in the litigation. But it is a long way from the now well-established fact that Mother Hubbard clauses can understandably be misread to the concurring opinion's conclusion that clear language should be given no meaning. We require certainty for finality, but we cannot say that certainty is impossible.

The concurring opinion claims as authority for its position pre-*Mafrige* law, but before *Mafrige*, this Court repeatedly held that general language in a summary judgment finally disposed of the litigation even though no party had requested final relief. In *Schlipf v. Exxon Corp.* we held that an order granting the plaintiffs' motion for summary judgment on one of its claims and generally denying all other relief was final, even though no defendant had moved for summary judgment or requested the denial of any relief.[95] Similarly, in *Chessher v. Southwestern Bell Telephone Co.* we held that a summary judgment generally disposing of all four claims asserted by the plaintiff was final, even though the defendant moved for summary judgment on only one of the claims.[96] Again in *Young v. Hodde*, we agreed that a Mother Hubbard clause in an order granting summary judgment for the plaintiff disposed of a defendant's counterclaim, even though the plaintiff's motion had addressed only his own claims and not the counterclaim.[97] It has simply never been the law in Texas that a summary judgment generally disposing of all claims and parties is nevertheless interlocutory merely because rendition of a final judgment was improper.

In essence, the concurring opinion's position is that a trial court has no jurisdiction to grant more relief than is requested, and that if it does so, its action is absolutely void. We do not agree that a court's *power* to act, as distinct from the proper exercise of that power, is defined by a party's request for relief.

The concurring opinion acknowledges that its position may result in more appeals being taken from orders that look final but are really interlocutory, but it argues that appellate courts can easily deal with such problems by abating appeals to allow trial courts to clarify their orders. What the concurring opinion ignores is that trial courts and parties will assume that orders with general dispositive language mean what they say, only to learn months or years after an appeal should have been taken that no final judgment was ever rendered. JUSTICE BAKER would insist that every order granting summary judgment

> specifically identify: (1) the claims each party brought; (2) the grounds upon which each party seeks summary judgment; (3) each ground upon which the trial court granted summary judgment; and (4) each ground upon which the trial court denied summary judgment.

Any order that failed to meet these requirements would be interlocutory, according to JUSTICE BAKER, "*regardless* of how clearly it states that it is a final judgment disposing of all parties and issues."[98] The very real risk of such a rule is that thousands of judgments intended to be final would remain interlocutory because they did not comply with all of these require-

---

**95.** 644 S.W.2d 453 (Tex.1982) (per curiam).

**96.** 658 S.W.2d 563 (Tex.1983) (per curiam). Although our opinion did not quote the trial court's order, an examination of the record in the case reveals that the order recited that the court had considered the defendant's motion for summary judgment, the plaintiff's responses, and the defendant's reply, and had notified the parties that "it had determined to grant the defendant's motion for summary judgment." The decretal portion of the order stated "that plaintiff, Paul G. Chessher, take nothing of and from defendant, Southwestern Bell Telephone Company. Costs of court are hereby taxed against plaintiff, Paul G. Chessher."

**97.** *Young v. Hodde*, 682 S.W.2d 236, 236–237 (Tex.1984) (per curiam), *writ ref'd n.r.e.,* 672 S.W.2d 45 (Tex.App.—Houston [14th Dist.] ).

**98.** *Post* at 219 (emphasis in original).

ments. This is precisely what has happened in the federal system, as we have already explained, even though the federal rules impose far fewer requirements on final judgments than the concurring opinion would.

\* \* \* \* \*

For the reasons we have explained, the judgments of the court of appeals in these cases are reversed, and the cases are remanded to that court for further proceedings.

Justice BAKER filed a concurring opinion in which Justice ENOCH joined, except for Part IV and the discussion of Inglish and Bandera, and in which Justice HANKINSON joined, except Part IV.

The Court granted these petitions in *Lehmann* and *Harris* to solve the *Mafrige* problems. The Court fails to do so. Thus, while I concur in the result the Court reaches, I cannot agree with the reasoning it uses to reach that result.

In March 1993, we granted writ in *Mafrige v. Ross* to resolve the inherent problems in determining finality of summary judgments for purposes of appeal. 866 S.W.2d 590 (Tex.1993). There we recognized that determining finality had "been a recurring and nagging problem throughout the judicial history of this state." *Mafrige,* 866 S.W.2d at 590. Thus, in a major departure from our prior jurisprudence, we created a new rule providing: "If a summary judgment order appears to be final, as evidenced by the inclusion of language purporting to dispose of all claims or parties, the judgment should be treated as final for purposes of appeal." *Mafrige,* 866 S.W.2d at 592.

Despite the certainty we intended this bright-line rule to provide, the last seven years have proved that the *Mafrige* rule has created more problems than it solved—confusing the lower courts, operating as a trap for unwary litigants, and consistently bringing about arguably unjust and oftentimes absurd results. So, in November 1999, we granted the petitions in these cases to resolve the *Mafrige* problems. Inexplicably, the Court begins its opinion by chronicling the evolution of the rules and presumptions governing finality of orders following a conventional trial on the merits from the middle of the last century to the present.[1] Then, with very little discussion of the problems *Mafrige* and its progeny created in determining summary judgment finality, the Court concludes that the solution is to maintain the principle of the *Mafrige* legal fiction—with only slight modification.

However, rather than solve, the Court merely perpetuates the problems *Mafrige* created. The cases grappling to apply *Mafrige* illustrate that there is but one real solution. We should return to the principle we announced in *Teer v. Duddlesten*—that a Mother Hubbard clause simply "has no place in a partial summary judgment," and that a summary judgment order is not an appealable, final judgment unless it actually disposes of all parties and issues. 664 S.W.2d 702, 703–04 (Tex. 1984).

The Court states: "[W]e do not write rules by opinion." 39 S.W.3d at 205. The Court is right; we should not establish rules by judicial fiat. We should not have done so in *Mafrige* and we should not have perpetuated the *Mafrige* problems with *Inglish* and *Bandera.* Any new summary judgment finality rule should be achieved by this Court's formally promulgating a new procedure rule. The Court should recognize this, overrule *Mafrige* and its progeny, and await a recommendation by

---

1. These rules and presumptions are irrelevant to the issues before the Court today. As we have repeatedly admonished—in *Mafrige,* in *Aldridge,* and even in the Court's opinion today—the rules governing finality after a conventional trial are wholly inappropriate for determining finality of summary judgments. *See Mafrige,* 866 S.W.2d at 592; *North East Indep. Sch. Dist. v. Aldridge,* 400 S.W.2d 893, 897–98 (Tex.1966); *Lehmann,* 39 S.W.3d 191.

our rules advisory committee. Because the Court refuses to take this path, I concur in the judgment only.

## I. *MAFRIGE* AND ITS PROGENY

Before *Mafrige*, courts determined summary judgment finality by reviewing the live pleadings, the summary judgment motion, and the summary judgment order. *Harris County v. Nash*, 22 S.W.3d 46, 49–50 (Tex.App.—Houston [14th Dist.] 2000, pet. filed); *Kaigler v. General Elec. Ins. Mortgage Corp.*, 961 S.W.2d 273, 275 (Tex. App.—Houston [1st Dist.] 1997, no pet.). A summary judgment was deemed final and appealable only if it expressly disposed of all parties and issues or if it was severed from the remainder of the suit. *Pan Am. Petroleum Corp. v. Texas Pac. Coal & Oil Co.*, 159 Tex. 550, 324 S.W.2d 200, 200 (1959) ("[A] summary judgment which does not dispose of all parties and issues in the pending suit is interlocutory and not appealable unless a severance of that phase of the case is ordered by the trial court.").

With *Mafrige*, this Court attempted to simplify this process by holding that the "magic language" of a Mother Hubbard or similar finality clause conclusively transforms an interlocutory summary judgment into a final, appealable order. *Mafrige*, 866 S.W.2d at 592. We have twice revisited *Mafrige* to clarify its scope. *See Inglish v. Union State Bank*, 945 S.W.2d 810, 811 (Tex.1997) (holding that the *Mafrige* rule applies even when neither party appeals the erroneous summary judgment); *Bandera Elec. Coop., Inc. v. Gilchrist*, 946 S.W.2d 336, 337 (Tex.1997) (explaining that when the *Mafrige* rule renders a partial summary judgment final for purposes of appeal, the appellate court should reverse and remand only the erroneously disposed claims). Unfortunately, *Mafrige* did little towards alleviating the lower courts' confusion—and *Inglish* and *Bandera* only compounded it. The Court's opinion suffers the same problem. Namely, its slightly-modified *Mafrige* rule falls far short of remedying the myriad of problems the *Mafrige* fiction and its progeny created.

### A. FINALITY LANGUAGE

One source of confusion under *Mafrige* has been uncertainty about what language triggers its finality rule. In *Mafrige*, we held that a partial summary judgment is treated as final for appeal purposes when the order contains a Mother Hubbard clause stating that "all relief not expressly granted is denied" or other language "purporting to dispose of all claims or parties." 866 S.W.2d at 590 & n. 1, 592. We further clarified that "other" finality language includes "a statement that the summary judgment is granted as to all claims asserted by the plaintiff, or a statement that the plaintiff takes nothing against defendant." *Mafrige*, 866 S.W.2d at 590 n. 1.; *see also Inglish*, 945 S.W.2d at 811 (holding statement that "[d]efendant is entitled to summary judgment in this case," and that plaintiff should "take nothing on account of his lawsuit" rendered partial summary judgment final for purposes of appeal); *Springer v. Spruiell*, 866 S.W.2d 592, 593 (Tex.1993) (holding that summary judgment order reciting plaintiffs "have and recover nothing" purported to dispose of all parties and issues).

Despite these examples, some lower courts have refused to hold orders containing this exact language final for purposes of appeal. *E.g., Carey v. Dimidjian*, 982 S.W.2d 556, 558 (Tex.App.—Eastland 1998, no pet.) (holding that order containing Mother Hubbard clause was not final and appealable where the motion was labeled "Partial Summary Judgment" and the parties treated the order as interlocutory); *Hinojosa v. Hinojosa*, 866 S.W.2d 67, 69–70 (Tex.App.—El Paso 1993, no writ) (holding that order containing Mother Hubbard clause did not render judgment final because it did not dispose of counterclaim). Other courts have struggled with what "other" language purports to render a judgment final—often reaching opposite conclusions about identical clauses. *Com-*

pare *Postive Feed, Inc. v. Guthmann*, 4 S.W.3d 879, 881 (Tex.App.—Houston [1st Dist.] 1999, no pet.) (holding that order granting defendant's summary judgment "in all things" purported to be final), *with St. Paul Ins. Co. v. Mefford*, No. 05–96–01581–CV, 1998 WL 821537 (Tex.App.—Dallas Nov. 30, 1998, no pet.) (not designated for publication), 1998 WL 821537, at *2[2] (holding that order granting defendant's summary judgment "in all things" did not purport to be final).

While the Court recognizes that the "routine inclusion of [a Mother Hubbard clause] in otherwise plainly interlocutory orders and its ambiguity in many contexts have rendered it inapt for determining finality," 39 S.W.3d at 192, it ignores the obvious problems courts have faced interpreting *other* language "purporting to dispose of all claims or parties." *Mafrige*, 866 S.W.2d at 592. In fact, despite the Court's extensive analysis and discussion, its holding represents but a minor departure from *Mafrige*.

Its modified rule has two parts. The first represents no change in Texas law. It simply reiterates that a summary judgment order that *actually* disposes of all parties and issues is final for purposes of appeal. 39 S.W.3d at 192. The second part provides that a Mother Hubbard clause is no longer enough to invoke the fiction that an otherwise interlocutory order is treated as final for purposes of appeal. Instead, to invoke the *Mafrige* fiction, an interlocutory order must now "clearly and unequivocally state[ ] that it finally disposes of all claims and all parties." 39 S.W.3d at 205. The Court further explains that the statements "plaintiff take nothing by his claims in the case" and "[t]his judgment finally disposes of all parties and all claims and is appealable" clearly and unequivocally state that

an order is final. 39 S.W.3d at 205. In essence, the Court's rule does no more than replace one set of magic language with another—while ignoring the reality that courts will likely face the same challenges deciding what language "clearly and unequivocally states" that an order is final, 39 S.W.3d at 205, as they did deciding what other language clearly "purport[s] to dispose of all claims or parties" under *Mafrige*. 866 S.W.2d at 592.

### B. OMITTED PARTIES

Applying *Mafrige* to omitted parties, like those in both *Lehmann* and *Harris*, has also troubled the lower courts. Specifically, they have struggled with deciding when finality language operates to render a summary judgment final against omitted parties. This issue often surfaces when both the summary judgment motion *and* the resulting order omit any specific reference to one or more parties.[3] In this situation, several courts have held that *Mafrige* applies, reasoning that issues and parties are co-extensive and thus if "an order disposes of all issues in a case, then it necessarily disposes of all parties to a case, and vice versa." *Kaigler*, 961 S.W.2d at 276; *see also Lehmann v. Har–Con Corp.*, 988 S.W.2d 415, 416–17 (Tex.App.—Houston [14th Dist.] 1999, pet. granted); *Harper v. Newton*, 910 S.W.2d 9, 12 n. 1 (Tex.App.—Waco), *rev'd sub nom. on other grounds, Dallas County v. Harper*, 913 S.W.2d 207 (Tex.1995).

In contrast, other courts have interpreted *Mafrige* more narrowly, reasoning that an "order that explicitly grants a summary judgment in favor of less than all the defendants *does not* clearly evidence an intent to dispose of all claims against all defendants, especially those against whom

---

**2.** The unpublished opinions cited in Part I are cited only as examples, not as precedent. *See* TEX.R.APP. P. 47.7.

**3.** This issue also arises when a trial court expressly mentions and disposes of a party even though that party was not mentioned in

the motion for summary judgment. Here, the lower courts have been more willing to apply *Mafrige* and hold that the order purports to dispose of all parties and issues. *See, e.g., Mikulich v. Perez*, 915 S.W.2d 88, 91–92 (Tex. App.—San Antonio 1996, no writ).

summary judgment was not sought, regardless of the inclusion of a Mother Hubbard clause." *Lowe v. Teator*, 1 S.W.3d 819, 823–24 (Tex.App.—Dallas 1999, pet. filed); *see also Midkiff v. Hancock E. Tex. Sanitation, Inc.*, 996 S.W.2d 414, 416 (Tex. App.—Beaumont 1999, no pet.); *Vanderwiele v. Llano Trucks, Inc.*, 885 S.W.2d 843, 845 (Tex.App.—Austin 1994, no writ).

Here the Court summarily dismisses this omitted parties problem:

> Nothing in the order in *Lehmann* indicates that it is a final judgment, and it did not dispose of all pending claims and parties. The order in *Harris* states that plaintiff take nothing as to "one of the defendants", but that language does not suggest that all of the plaintiffs' claims were denied. As the order recites and as the record demonstrates, the defendant named in the order was not the only defendant remaining in the case. Thus, we conclude that a final appealable judgment was not rendered in either case.

39 S.W.3d at 206. Despite the presence of a Mother Hubbard clause, the trial court and parties in *Lehmann* continued treating the order as interlocutory-even in the face of this Court's admonishment that a Mother Hubbard clause indicates finality.[4] 988 S.W.2d at 416. The Court now holds that the order did not purport to be final based solely on its new rule discounting the dispositive effect of Mother Hubbard clauses.

However, the Court's resolution merely sidesteps the real problem. What happens in the next case when, on facts identical to *Lehmann*, a trial court signs an interlocutory summary judgment with the Court's new magic language rather than a Mother Hubbard clause? We are right back where we started. Substituting one magic phrase for another leads nowhere.

The reality is simply that omitted parties oftentimes do not believe that a summary judgment order that they have not seen, that does not mention them, and that results from a hearing in which they did not participate will operate to dispose of them or their claims. But, under the Court's standard, if these parties do not perfect a timely appeal from the erroneous judgment, their right to appeal is forever lost. This result elevates form over substance and hinders parties' rights to have the merits of their claims considered. *See, e.g., Rodriguez v. NBC Bank*, 5 S.W.3d 756, 763 n. 4 (Tex.App.—San Antonio 1999, no pet.) (recognizing this Court's "express goal of reaching the merits of a cause of action, instead of dismissing actions on procedural technicalities").

### C. OMITTED CROSS-CLAIMS AND COUNTERCLAIMS

The courts of appeals have also treated omitted cross-claims and counterclaims inconsistently—despite our holding in *Bandera*. In *Bandera*, the trial court signed an order with a Mother Hubbard clause that did not mention the defendant's counterclaims. 946 S.W.2d at 337. This Court explained that "[b]ecause the order contained a Mother Hubbard clause denying all other relief, it also purported to dispose of [the defendant's] counterclaims." *Bandera*, 946 S.W.2d at 337. But several courts have refused to apply *Mafrige* in this situation, maintaining that a summary judgment that does not mention counterclaims or cross-claims cannot purport to be final-regardless of whether it contains finality language. *E.g., Sommers v. Concepcion*, 20 S.W.3d 27, 33 (Tex.App.—Houston [14th Dist.] 2000, pet. denied); *Hervey v. Flores*, 975 S.W.2d 21, 25 (Tex. App.—El Paso 1998, pet. denied); *cf. Coleman Cattle Co., Inc. v. Carpentier*, 10 S.W.3d 430, 433 n. 2 (Tex.App.—Beaumont 2000, no pet.). Other courts have followed *Bandera*'s mandate, holding that finality language—such as "plaintiff takes noth-

---

4. In fact, the district clerk sent all the parties (including those omitted from the summary judgment order) a postcard indicating that an' "Order for Interlocutory Summary Judgment" had been signed. *Lehmann*, 988 S.W.2d at 416.

ing"—renders a judgment final for appeal purposes, despite omission of any reference to defendant's counterclaims. *In re Monroe*, No. 05–99–01758–CV, 2000 WL 378519 (Tex.App.—Dallas Mar.31, 2000, orig. proceeding) (not designated for publication), 2000 WL 378519, at *1–2; *see also Kaigler*, 961 S.W.2d at 275–76.

The Court's rule does not provide a satisfactory remedy for this situation either. The Court states:

> An order that adjudicates only the plaintiff's claims against the defendant does not adjudicate a counterclaim, cross-claim, or third party claim, nor does an order adjudicating claims like the latter dispose of the plaintiff's claims. An order that disposes of claims by only one of multiple plaintiffs or against one of multiple defendants does not adjudicate claims by or against other parties. An order does not dispose of all claims and all parties merely because it is entitled "final," or because the word "final" appears elsewhere in the order, or even because it awards costs. Nor does an order completely dispose of a case merely because it states that it is appealable, since even interlocutory orders may sometimes be appealable. Rather, there must be some other clear indication that the trial court intended the order to completely dispose of the entire case.

39 S.W.3d at 205.

Under its modified finality rule, the lower courts' disagreement in this area will continue because too many questions are left unanswered. For example, should a "final" summary judgment order stating that defendant is granted summary judgment "in all things" dispose of a cross-claim by another defendant as well as the claim by the plaintiff that brought the original claim? In this situation, there is no doubt that the order is unambiguous. However, it is likewise clear, but not from the order, that the third party's claim against the defendant was never considered. Should an order granting summary judgment for a plaintiff that recites it is a

final and appealable order be final for counterclaims not mentioned in the motion or order? The order unequivocally states that it is a final, appealable order. Nonetheless there is a counterclaim that has not been considered. The Court states that a summary judgment granted for a plaintiff "does not adjudicate a counterclaim" and then goes on to say that to make the order final there must be "some other clear indication that the trial court intended the order to completely dispose of the entire case." 39 S.W.3d at 205. In the example above, does the additional statement that "this is a final, appealable order" provide this "other clear indication"? These very issues are repeatedly raised in the courts of appeals, and the Court's modified rule simply does not resolve them.

## D. TRIAL COURTS' AND PARTIES' INTENT

Differing philosophies about the effect the trial courts' and parties' intent should have on how *Mafrige* applies has created the most confusion and inconsistency. The courts of appeals have taken three approaches. Some courts apply a bright-line test, holding that a Mother Hubbard clause or other finality language *always* renders an order final for appeal purposes, regardless of any evidence of contrary intent. *E.g., Preston v. American Eagle Ins. Co.*, 948 S.W.2d 18, 20–21 & n. 1 (Tex.App.—Dallas 1997, no writ) (holding that summary judgment purported to be final despite fact it was entitled "partial summary judgment"); *cf. In re Cobos*, 994 S.W.2d 313, 315 (Tex.App.—Corpus Christi 1999, orig. proceeding) ("As *Mafrige* and *Inglish* make clear, the intent of the trial court is not the controlling consideration in determining whether a judgment is final."). Other courts modify this approach, looking only within the four corners of the order and giving effect to any evidence of contrary intent found there. *E.g., Rodriguez*, 5 S.W.3d at 763–64 (Tex. App.—San Antonio 1999, no pet.) ("Looking within the four corners of the summary judgment order, the plain language of the

Mother Hubbard clause did not, and could not, purport to grant or deny any more relief than the relief which [the defendant] sought."); *Midkiff,* 996 S.W.2d at 416 (looking to order "as a whole" to conclude that summary judgment order containing Mother Hubbard clause did not purport to be final).

Finally, despite our holding in *Inglish* that the trial court's intent is irrelevant in this context, other courts still refuse to apply *Mafrige* if there is evidence of contrary intent *anywhere* in the record. This usually occurs when the parties and court treat an order as interlocutory by continuing with the litigation rather than appealing the erroneous order. *E.g., Lowe,* 1 S.W.3d at 823–24 (holding that summary judgment could not be final where the record reflected that there were parties who did not participate in the summary judgment proceeding); *Carey,* 982 S.W.2d at 558 (relying, in part, on court's and parties' treatment of order containing Mother Hubbard clause as interlocutory to conclude judgment was not final).

The Court's solution to this problem is as confusing as the rule it seeks to supplant. It appears to reject the bright-line approach *Mafrige* espouses and instead adopt a rule combining the second and third approaches. First, the Court notes that an order is final for appeal purposes if it "unequivocally states that it finally disposes of all parties and all claims and is appealable." 39 S.W.3d at 205. It also explains that "[i]f the language of the order is clear and unequivocal, it must be given effect despite any other indications that one or more parties did not intend for the judgment to be final." 39 S.W.3d at 206. From these statements, the Court's new rule walks and talks a lot like a bright-line *Mafrige* rule, with magic language establishing finality.

However, the Court also states that "[t]o determine whether an order disposes of all pending claims and parties, it may of course be necessary for the appellate court to look to the record in the case." 39

S.W.3d at 205. This sounds more like a pre-*Mafrige* rule, where a court must look to the record and the order to determine if an order actually disposes of all pending parties and issues.

Because of the lower courts' confusion and disagreement about the role of intent in determining finality, I am convinced that the Court has not provided a workable rule that clearly defines that role as it applies to determining summary judgment finality.

### E. Applying *Mafrige* To Non-Summary Judgment Orders

Finally, the question of whether *Mafrige* applies outside the summary judgment context has confused the lower courts. Courts of appeals have applied *Mafrige* to a plea to the jurisdiction, *Webb v. HCM Mgmt. Corp.,* No. 07–96–0369–CV, 1998 WL 16033 (Tex.App.—Amarillo Jan. 12, 1998, pet. denied) (not designated for publication) 1998 WL 16033, at *1; an agreed judgment, *In re Cobos,* 994 S.W.2d at 315–16; a directed verdict, *e.g., Polley v. Odom,* 957 S.W.2d 932, 943 (Tex.App.—Waco 1997, judgm't vacated); and a severance order, *Harris County Flood Control Dist. v. Adam,* 988 S.W.2d 423, 427 (Tex.App.—Houston [1st Dist.] 1999, pet. filed). In contrast, at least one court has declined to apply *Mafrige* to a dismissal for want of jurisdiction. *In re Tejas,* Nos. 01–98–00688–CV, 01–98–00689–CV, 01–98–00690–CV, 1998 WL 394562 (Tex.App.—Houston [1st Dist.] July 13, 1998, orig. proceeding) (not designated for publication), 1998 WL 394562, at *1 n. 1. And another has expressly refused to extend *Mafrige* to any order that is not a summary judgment. *Biltmore Swim & Racquet Club Recreational Ass'n v. McAbee,* No. 05–98–00252–CV, 1998 WL 459819 (Tex.App.—Dallas Aug.10, 1998, no pet.) (not designated for publication), 1998 WL 459819, at *1.

In *Aldridge,* this Court held that a presumption of finality exists when an order is signed following a traditional trial on the

merits. *Aldridge*, 400 S.W.2d at 897–98. But we specifically noted that such a finality presumption would not be appropriate in other contexts. *Aldridge*, 400 S.W.2d at 897. Then in *Mafrige* we carved out an exception to what we had said in *Aldridge* by holding that an irrebuttable finality presumption applies to summary judgments containing a Mother Hubbard or similar finality clause. *Mafrige*, 866 S.W.2d at 592. Here again, just as we had limited *Aldridge* to conventional trials on the merits, we expressly limited *Mafrige* to summary judgments. *Mafrige*, 866 S.W.2d at 591 ("[T]he issue is whether ... a summary judgment, which purports to be final by the inclusion of Mother Hubbard language or its equivalent, should be treated as final for purposes of appeal."). Unfortunately, several courts of appeals have erroneously applied *Mafrige* in other contexts, causing confusion over how to determine finality of various other types of orders.

*Mafrige* and its progeny *are* limited to summary judgments—*with good reason*. No good can come of interjecting additional uncertainty into (1) conventional trials on the merits, to which the majority acknowledges the *Aldridge* presumption has "proved a fairly workable" rule, 39 S.W.3d at 200, or (2) numerous other types of orders, when even the majority acknowledges that "the ordinary expectation" supporting a finality presumption "simply does not exist when some form of judgment is rendered without such a trial" because "it is quite possible, perhaps even probable these days ... that any judgment rendered prior to a full-blown trial is intended to dispose of only part of the case." 39 S.W.3d at 200.

However, the Court's opinion here implicates finality of all judgments. This expansion into issues not before the Court today can only cause mischief in areas already plagued by confusion. If the Court persists in adhering to *Mafrige*'s principles, it should at least limit its hold-

ing, as we did in *Mafrige*, to summary judgments.

## II. POLICY CONSIDERATIONS

Not surprisingly, the post-*Mafrige* era has given rise to considerable analysis by courts and commentators of both the competing policies *Mafrige* implicates and suggestions for reform. A few have applauded the bright-line rule. *See Kaigler*, 961 S.W.2d at 275–76 (recognizing that the rule provides harsh results, but emphasizing that uniform enforcement "encourage[s] attentiveness to correct judgments"); *Boyce, Mafrige v. Ross and the Pitfalls of Presumptions*, APPELLATE ADVOCATE, Nov. 1997, at 7 (opining that *Mafrige* "resolved the confusion created by prior contradictory language and flatly inconsistent holdings").

However, praises have been few and far between. Criticism has been the rule and the comments call for this Court to reconsider our decision:

> What began as a benign growth allowing review of unripe claims on appeal, in *Mafrige*, became a malignant cancer cutting off causes of action before trial, in *Inglish*. If it were up to me, I would lock Mother Hubbard in the cupboard and return to the rule before *Aldridge* that a judgment is final and appealable only if it expressly disposes of all parties and all claims in the case. That appellants can even cite authority for the absurd result they seek, illustrates how wrong a turn the law has taken in this area—and how strong the need to right it.

*Harris County Flood Control Dist.*, 988 S.W.2d at 427–28 (Taft, J., concurring in denial of rehearing en banc); *see also, e.g.*, *Lehmann*, 988 S.W.2d at 418 ("*Mafrige* is not as clear to litigants as the supreme court believes it is.... In short, *Mafrige* has created several problems: 1) it is catching the parties by surprise ...; 2) it exalts form over substance; and 3) in more than a few situations, it ignores common sense."); Carlson & Dunn, *Navigating*

*Procedural Minefields: Nuances in Determining Finality of Judgments, Plenary Power, and Appealability*, 41 S. TEX. L.REV. 953, 971 (2000) ("[D]espite the appeal of the certainty provided by this bright-line rule, the reality is that still, after seven years, it continues to operate as a trap for unwary litigants, bringing about arguably unjust and oftentimes draconian results."); Swanda, *Summary Judgment, Mother Hubbard Clauses, and Mafrige v. Ross*, APPELLATE ADVOCATE, May 1997, at 3 (complaining that the questions *Mafrige* raises "are just as elusive" as the questions it sought to resolve).

Strong policies support our practice of adhering to settled rules of law "unless there exists the strongest reasons for chang[e]." *Benavides v. Garcia*, 290 S.W. 739, 740–41 (Tex. Comm'n App.1927, judgm't adopted). But we have also recognized the "doctrine of stare decisis does not stand as an insurmountable bar to overruling precedent." *Gutierrez v. Collins*, 583 S.W.2d 312, 317 (Tex.1979). "Generally, we adhere to our precedents for reasons of efficiency, fairness, and legitimacy." *Weiner v. Wasson*, 900 S.W.2d 316, 320 (Tex.1995). However, when adherence to a judicially-created rule of law no longer furthers these interests, and "the general interest will suffer less by such departure, than from a strict adherence," we should not hesitate to depart from a prior holding. *Benavides*, 290 S.W. at 740. The lower courts' application of *Mafrige* over the last seven years illustrates undeniably that this is just such a case.

We intended *Mafrige*, *Inglish*, and *Bandera* to provide certainty to litigants. Instead, they have bred chaos. Most disturbing is that the casebooks are now replete with examples of dismissed cases where the parties and courts clearly intended an order containing finality language to be interlocutory.[5] *E.g., Inglish,*

945 S.W.2d at 811; *In re Cobos*, 994 S.W.2d at 315–16; *Pena v. Valley Sandia, Ltd.*, 964 S.W.2d 297, 298–99 (Tex.App.—Corpus Christi 1998, no pet.); *Kaigler*, 961 S.W.2d at 275–76. Even the Court acknowledges:

> [T]he ordinary expectation that supports the presumption that a judgment rendered after a conventional trial on the merits will comprehend all claims simply does not exist when some form of judgment is rendered without such a trial. On the contrary, it is quite possible, perhaps even probable these days in cases involving multiple parties and claims, that any judgment rendered prior to a full-blown trial is intended to dispose of only part of the case. Accordingly, the finality of the judgment must be determined without the benefit of any presumption.

39 S.W.3d at 200. Because of this reality, it is difficult to understand why the Court persists in adhering to *Mafrige*'s principles.

The author of the Court's opinion recently opined: "Appellate procedure should not be tricky. It should be simple, it should be certain, it should make sense, and it should facilitate consideration of the parties' argument on the merits...." *Lane Bank Equip. Co. v. Smith Southern Equip., Inc.*, 10 S.W.3d 308, 314 (Tex.2000) (Hecht, J., concurring). This Court has repeatedly refused to adopt positions which elevate form over substance. *See, e.g., Phillips v. Beaber*, 995 S.W.2d 655, 658 (Tex.1999); *Nueces Canyon Consol. Indep. Sch. Dist. v. Central Educ. Agency*, 917 S.W.2d 773, 775–76 (Tex.1996). The Court here even recognizes that "[s]implicity and certainty in appellate procedure are nowhere more important than in determining the time for perfecting appeal." 39 S.W.3d at 205. Unfortunately though, the Court declines to embrace this opportunity

---

5. Oftentimes in these cases litigation continues to move forward. Any error in including magic finality language in a summary judgment is not discovered until it is too late; the appellate timetable has expired and the trial court has lost plenary power to act. The litigants have forever lost their right to complain of the judgment.

to effectuate meaningful change and provide certainty for courts and litigants. Instead the Court leaves them as it found them, grappling with determining whether summary judgment orders are fictitiously made final.

## III. THE SOLUTION

The Court notes: "[W]e do not write rules by opinion. We must decide what Texas law requires for finality, given the present rules ." 39 S.W.3d at 205. Yet, the *Mafrige* finality rule this Court created represented such a major departure from prior Texas law. In fact, but for the judicially-created *Mafrige* rule, no one would dispute that "what Texas law requires for finality" of summary judgments is an order actually disposing of all parties and issues.

Rather than simply amend the *Mafrige* finality rule and perpetuate the problems the unworkable system *Mafrige* and its progeny created, the Court should focus on shaping a real solution—one providing the desired certainty and protecting parties' right to appellate review. This requires wiping the slate clean. *Mafrige* created enough problems with its fictional finality and its holding that trial courts can use magic language to create final summary judgments by granting relief not requested. 866 S.W.2d at 591–92. In *Inglish* we compounded the problem by confirming that *Mafrige* applies even when the parties continue litigating rather than appealing a partial summary judgment made final under *Mafrige*. 945 S.W.2d at 811. We completed the trilogy in *Bandera*, holding that when a party appeals a summary judgment granting more relief than requested, the court of appeals should address the merits of the appeal, remanding only the part of the judgment that exceeds the relief requested in the summary judgment motion. 946 S.W.2d at 337. Undeniably, these rules were designed to simplify summary judgment finality. But, in application, these cases only demonstrate that we should have adhered to our own ad-

monishments that this Court simply should not make rules by opinion. *E.g., Alvarado v. Farah Mfg. Co.,* 830 S.W.2d 911, 915 (Tex.1992) (explaining that we should not revise rules by opinion); *see also Verburgt v. Dorner,* 959 S.W.2d 615, 619 (Tex.1997) (Baker, J., dissenting) (noting that this Court's jurisprudence forbids rule amendments by judicial fiat).

Thus, we should overrule *Mafrige, Inglish,* and *Bandera*—to the extent they created new rules by judicial fiat—and instead tackle the problems of summary judgment finality through our rulemaking process. Accordingly, we should return to our prior position that a Mother Hubbard clause (or other magic language) has no place in any summary judgment order—final or partial—and that a trial court may not *sua sponte* grant more relief than the parties request simply by adding conclusory finality language to a summary judgment order. Further, a summary judgment should be entitled to no presumption at all about whether it is final.

Returning to the law as it was pre-*Mafrige* requires determining the state of the law before *Mafrige*. *Mafrige* actually held two things: (1) that " 'Mother Hubbard' language or its equivalent in an order granting summary judgment makes an otherwise partial summary judgment final for appeal purposes;" and (2) that if a summary judgment "grants more relief than requested, it should be reversed and remanded, but not dismissed." 866 S.W.2d at 590, 592.

Before *Mafrige*, this first holding was not the law. In *Teer v. Duddlesten* we held that:

> There is no presumption in partial summary judgments that the judgment was intended to make an adjudication about all parties and issues. The Mother Hubbard clause that "all relief not expressly granted is denied" has no place in a partial summary judgment hearing. The concepts of a partial summary judgment on the one hand, and a judgment

that is presumed to determine all issues and facts on the other, are inconsistent. 664 S.W.2d at 704. In *Mafrige* we recognized this earlier statement in *Teer*, but rejected it and held that finality language could render a partial summary judgment final for purposes of appeal. 290 S.W.2d at 592.

*Mafrige*'s second holding—that a summary judgment granting more relief than requested should be reversed and remanded, but not dismissed—does not appear to be an entirely new rule. In both *Teer* and *Chessher*, another pre-*Mafrige* case, we reversed and remanded (rather than dismissed) summary judgment orders after determining that they were interlocutory because they granted more relief than requested. *See Teer*, 664 S.W.2d at 705; *Chessher v. Southwestern Bell Tel. Co.*, 658 S.W.2d 563, 564 (Tex.1983). *But see Ross v. Arkwright Mut. Ins. Co.*, 834 S.W.2d 385, 393 (Tex.App.—Houston [14th Dist.] 1992) (opining that these cases are "in direct contravention of Tex.R. Civ. P. 166a(c)" and discussing disagreement in the courts over whether summary judgment orders granting more relief than requested were interlocutory or appealable, but erroneous, judgments), *rev'd sub. nom. Mafrige*, 866 S.W.2d at 590. Thus, while the courts were not entirely in agreement, it appears we had already established the rule that a summary judgment order granting more relief than requested is not interlocutory—it is simply erroneous. For this reason, I agree with the Court that if an order actually does dispose of each claim and every party, it is an appealable judgment, even if it grants more relief than requested. This is consistent with the long-standing rule that if an order *actually* disposes of all parties and issues,

it is final for appeal purposes. *E.g., Houston Health Clubs, Inc. v. First Court of Appeals*, 722 S.W.2d 692, 693 (Tex.1986). However, consistent with my view that we should overrule *Mafrige* and its progeny and recognize no presumption *for or against* finality, I do not believe any type of conclusory finality language can ever be read to grant more relief than requested by the parties.[6]

We should determine summary judgment finality by comparing the live pleadings and the summary judgment order. A summary judgment order should only be final if it matches the contents of the pleadings. And, as was the law before *Bandera*, a court of appeals should summarily reverse any summary judgment granting more relief than requested, without any *sua sponte* severance of some issues while others are remanded.

Wiping the slate clean by overruling the rules created in *Mafrige*, *Inglish*, and *Bandera* while we study the best method of tackling summary judgment finality through our formal rule-promulgation process is the better solution for several reasons. First, this approach strikes a more reasonable balance between the competing policies of promoting certainty and preserving parties' rights to appellate review. And, under this approach, the trial court and the parties drafting summary judgment orders would have the burden, and *the incentive*, to ensure that the pleadings, summary judgment motions, and the summary judgment orders match. If a premature appeal is taken, the court of appeals need only compare the pleadings, motions, and order. If the order does not dispose of parties or issues raised in the pleadings, then it is interlocutory and the court must dismiss the appeal.[7] If the order explicitly

---

6. It would *not* be enough for a court to generally state "plaintiff takes nothing," "defendant is granted summary judgment in all things," or "this is a final appealable judgment." Conclusory finality clauses (i.e. "magic language") do not indicate that a trial court *actually* granted relief *not requested* for or

against parties or issues are *not mentioned* in the order.

7. Of course, this procedure would not apply if the order fell within the category of cases for which there can be more than one final judgment, or the category of orders for which a

disposes of issues and parties not raised in the motion, it is erroneous and the court must reverse the entire order.

Most importantly, this approach alters the consequences of poorly-drafted orders. Specifically, the consequence flowing from a poorly drafted order becomes the risk of a *premature* appeal rather than an *untimely* one. This eliminates the greatest risk *Mafrige* created—that an interlocutory order, contrary to the trial court's and (at least one party's) intent, will be fictitiously made final, starting the appellate and plenary power timetables even while the litigation continues. No one would argue that conducting a trial after the trial court's plenary power has expired is not a waste of judicial resources. Moreover, because overruling *Bandera* eliminates the benefits of a premature appeal, taking such an appeal would not be a cost-efficient mistake for litigants to make, increasing the incentive to ensure orders are more clearly drafted. If a premature appeal is nonetheless taken, it would not create an onerous burden for the appellate court. The opposing party need only file a brief pointing out that the pleadings, motion, and order do not match, leading to automatic remand or dismissal.

No one disputes that rules governing summary judgment finality could be helpful to the bench and bar and facilitate judicial efficiency. But history, as well as our own precedent, has shown that judicial opinions are not the place to achieve this. Any attempt to adhere to the *Mafrige* principle or retain parts of it while rejecting others can only lead to more problems. Instead, this Court should overrule *Mafrige* and its progeny and start anew. As the Court even notes, our rules advisory committee is currently studying summary judgment finality. 39 S.W.3d at 216. Retaining parts of *Mafrige, Inglish, Bandera* as modified by the Court's less-than-clear opinion today—only to follow with promulgation of a concurrent finality rule—will only lead to more confusion.

court of appeals has been granted statutory

I agree that the cases here should be reversed. But, because the Court refuses to fix the problems its judicial rulemaking in *Mafrige* caused and allow our rulemaking process to work, I cannot join the Court's opinion.

## IV. RECOMMENDATION

I recognize that the Supreme Court of Texas Advisory Committee on Rules of Civil Procedure has been studying the problem of summary judgment finality. It has proposed an amendment to Rule 166a of the *Texas Rules of Civil Procedure:*

(j) Statement of Grounds. An order granting summary judgment must state the ground or grounds on which the motion was granted. No judgment may be affirmed on other grounds stated in the motion unless they are asserted by appellee in the appellate court as alternative grounds for affirmance.

I do not believe this proposed amendment goes far enough.

First I would suggest to the committee that they consider requiring each summary judgment order specifically identify: (1) the claims each party brings; (2) the grounds upon which each party seeks summary judgment; (3) each ground upon which the trial court granted summary judgment; and (4) each ground upon which the trial court denied summary judgment.

This solution is intuitive. In the vast majority of cases, this formality, rather than including magic language, would provide notice to parties about what has actually happened. In practice, this procedure alleviates many problems *Mafrige*'s finality rule has caused.

Under this approach, a summary judgment is not final unless the order specifically identifies each claim for relief, the grounds upon which each party seeks summary judgment, and the court's disposition

authority to review interlocutory orders.

of each claim and party. The appellate court's jurisdiction is determined only by looking at whether the trial court rendered an order expressly disposing of all remaining parties and issues. If the trial court errs by omitting certain claims or parties from the order, as happened in *Lehmann* and *Harris,* it is not a final order for purposes of appeal. Under this approach a party *never* loses its right to appeal based upon the finality of a summary judgment order *that is silent* about the party or its claims or that *sua sponte* grants relief no party requested without mentioning the parties or claims—*regardless* of how clearly it states that it is a final judgment disposing of all parties and issues.

Most significantly, *in practice* this would lead to better drafting and fewer erroneous appeals. Specifically, if required to expressly list each ground upon which summary judgment is requested, trial courts are not likely to *add* grounds to their order that the summary judgment motion did not raise.

Second, I would suggest the committee consider a rule requiring that the prevailing party, who is charged with drafting the court's order, serve copies on all other parties at least ten days *before* the trial court is to sign and enter the order. Consistent with this suggestion, I agree with the Court's suggestion that the clerk send copies of all the actual signed orders—rather than just a postcard indicating that the court has signed an order.

The majority's author criticizes my first recommendation, asserting that there is a "very real risk" that requiring judges to be explicit in their summary judgment orders would result in "thousands of judgments intended to be final ... remain[ing] interlocutory." 39 S.W.3d at 196. He contends that "[t]his is precisely what has happened in the federal system even though the federal rules impose far fewer requirements on final judgments than the dissent would." 39 S.W.3d at 208. Federal Rule 58, to which he refers, requires that *all*

*final judgments* "be set forth on a separate document" and be entered by the clerk on the docket. FED.R.CIV.P. 58.

This criticism only serves to amplify the real dangers of straying outside the summary judgment context in these cases. How finality of different types of judgments is determined must be governed by the *nature* of the judgment. *Houston Health Clubs, Inc.,* 722 S.W.2d at 693 ("In determining whether a judgment is final, different presumptions apply depending on whether the judgment follows a conventional trial on the merits or results from default or a motion for summary judgment."). Cognizant of this, my recommendation, unlike Federal Rule 58, is limited to summary judgment finality.

The live pleadings define the issues in a case. The issues tried do not always mirror these pleadings. *See Vance v. Wilson,* 382 S.W.2d 107, 108 (Tex.1964). Nonetheless, we have repeatedly recognized that a presumption should exist that all issues presented by the pleadings are disposed of in a conventional trial on the merits. *See Aldridge,* 400 S.W.2d at 897–98; *Vance,* 382 S.W.2d at 108. This presumption can be rebutted by a contrary showing in the record. *See Richey v. Bolerjack,* 589 S.W.2d 957, 959 (Tex.1979). But absent such a rebuttal, this presumption prevents judgments from languishing after trial based solely on variations in the pleadings and judgment. This presumption has saved us from the types of problems the federal system has experienced.

However, we sensibly limited this presumption to judgments "not intrinsically interlocutory in character." *Aldridge,* 400 S.W.2d at 897. We have also explained that summary judgments are intrinsically interlocutory and thus they should not be presumed final. *Houston Health Clubs, Inc.,* 722 S.W.2d at 693. Thus, there is nothing illogical about requiring that finality language be explicit. And I respectfully disagree that my recommendation, limited to summary judgments, will cause such

major havoc in the court system. Further, I believe the additional formality in this context is worth the certainty and protections such a rule provides.

## V. CONCLUSION

In Texas, the test for determining summary judgment finality has always been whether the judgment disposes of all parties and all issues raised in the pleadings. In *Mafrige* we created a legal fiction to simplify the process of determining finality. But *Mafrige* created more problems than it solved. It is beyond me why the Court insists on struggling through pages and pages of history about presumptions, magic language, and Mother Hubbard clauses instead of squarely considering the problems *Mafrige* caused and providing a solution. Its willingness to cling to this legal fiction, while refusing to recognize that our rulemaking in *Mafrige* and its progeny was not the correct solution, will only create more problems.

I concur in the judgment in these cases. But, because the Court declines to overrule *Mafrige, Inglish,* and *Bandera,* and await our promulgation of a rule governing summary judgment finality, I do not concur in its reasoning.

