Opinion issued January 8, 2004




            













In The
Court of Appeals
For The
First District of Texas
 

 
 
NO. 01-02-00160-CV
____________

GEORGE R. NEELY AND WAVERLY R. NOLLEY, Appellants

V.

VALENCIA L. HUBBARD, ROBERT IRA KAHN, ASHLEY SPECIA,
J. FELIX GONZALES, GLORIA BEAN, FREDERICK SPENCER
HUBBARD, ANDREA BOBIN, INDIVIDUALLY AND AS NEXT FRIEND
OF LEFRIEDA TERREL HUBBARD, LISA ANN SALINAS,
INDIVIDUALLY AND AS NEXT FRIEND OF ALEXIS BRIANA
HUBBARD, AND VALENCIA ELI HUBBARD, INDIVIDUALLY AND AS
NEXT FRIEND OF FREDERICK RILEY HUBBARD, Appellees


 
 
On Appeal from Probate Court No. 2
Harris County, Texas
Trial Court Cause No. 315,457-401
 

 
 
MEMORANDUM OPINION
          Appellants, attorneys George R. Neely and Waverly R. Nolley, challenge the
trial court’s final judgment disposing of their claims asserted against appellees,
Valencia L. Hubbard, Robert Ira Kahn, Ashley Specia, J. Felix Gonzales, Gloria
Bean, Frederick Spencer Hubbard, Andrea Bobin, individually and as next friend of
Lefreida Terrel Hubbard, Lisa Ann Salinas, individually and as next friend of Alexis
Briana Hubbard, and Valencia Eli Hubbard, individually and as next friend of
Frederick Riley Hubbard, in the probate proceedings concerning the estate of
Frederick Frank Hubbard.



          In their sole issue, appellants contend that the trial court erred in “entering a
judgment purporting to dispose of [a]ppellants’ claims” as raised in their “Original
Petition in Intervention and Third Party Petition.”
          We affirm.
Facts and Procedural Background
          On February 20, 1999, a security guard, employed by Federation Security
Agency, Inc. (Federation), fatally shot Frederick Frank Hubbard at the Wilcrest Park
Townhomes (Wilcrest), where he resided. At the time of the shooting, it was believed
that the decedent was legally married to Valencia Latrease Hubbard (Valencia). 
Valencia, who was represented by appellants, filed a wrongful death and bystander
lawsuit against Wilcrest and Federation in her individual capacity and as
representative of the decedent’s estate. Additional heirs of the decedent, represented
by separate counsel, intervened or filed petitions joining in the lawsuit.
          During discovery, the parties determined that, at the time of the shooting,
Valencia was merely a putative spouse of the decedent, because the decedent had not
divorced his previous wife, Mattie York, before “marrying” Valencia. Valencia
subsequently amended her pleadings to reflect her status as a putative spouse, and the
representation of the decedent’s estate was transferred to another party.
          Prior to trial, the decedent’s heirs settled their claims against Wilcrest for
$150,000 and agreed to deposit the funds into the registry of the court, pending an
allocation of the funds among the parties “as agreed by the [parties] or as ordered by
the court.” During trial, the claims against Federation were settled for $450,000, and
those funds were also deposited into the registry of the court.
          In November 2001, all of the heirs except Valencia reached an agreement
concerning an apportionment of the settlement proceeds among themselves, in
various percentages, to be applied following the trial court’s award of damages, if
any, to Valencia. The trial court subsequently conducted a hearing concerning the
apportionment of settlement funds to Valencia and ruled that, as a putative spouse,
she was not entitled to any damages for her wrongful death claims. The trial court
also awarded appellants attorneys’ fees and expenses totaling $22,550.37 for their
services rendered during their temporary representation of the decedent’s estate.
          Appellants subsequently filed a motion requesting that the trial court reconsider
its apportionment ruling concerning Valencia, and, after a second hearing on
apportionment in January 2002, the trial court denied the motion. On February 1,
2002, the trial court signed a judgment reflecting the parties’ settlement and
apportionment agreements, its decision to award Valencia nothing on her wrongful
death claims, and its award of fees and costs to appellants. Valencia then discharged
appellants as her attorneys and dismissed her claim for any of the settlement funds.



          On March 1, 2002, appellants filed a pleading entitled “Original Petition in
Intervention and Third Party Petition” asserting a claim for breach of contract against
Valencia and claims for, among other things, fraud, conspiracy to defraud, and
tortious interference with contract against all of the other parties and their counsel. 
In their petition, appellants alleged that counsel for the decedent’s heirs had paid or
promised to pay Valencia an unspecified sum of money to resolve her claims against
the decedent’s heirs over the settlement proceeds and that Valencia was “an active
participant . . . in attempting to destroy [relators’] claims for attorney’s fees . . . .”
          On March 8, 2002, the trial court signed a “Final Judgment” incorporating its
earlier decisions concerning the parties’ settlement and apportionment agreements,
as well as the trial court’s findings concerning the heirship of the various parties. 
Although the trial court’s March 8, 2002 judgment includes a “Mother Hubbard”
clause, which reads, “ALL RELIEF NOT GRANTED IS DENIED,” the judgment
does not specifically address the claims raised in appellants’ petition. Also on March
8, 2002, but after the final judgment was signed, appellants filed a motion to sever the
claims raised in their petition.
          After the trial court signed its March 8, 2002 judgment, the decedent’s heirs
filed a motion to strike appellants’ petition. On March 15, 2002, the trial court
conducted a hearing on the motion to strike and explained its ruling as follows:
[I]f it were an intervention against your former client seeking your fees,
that would be one thing; but this is a whole new lawsuit against a bunch
of new parties who were not parties to the original suit, although they
were counsel to parties in the original suit. And I’m not sure I do have
jurisdiction over all those issues, although I do have a sum of money in
the registry, but that’s all committed to various people. So I’m going to
grant the motion to strike the intervention. I think that the new lawsuit
is just too broad for this Court to really have jurisdiction over it, because
it’s a suit against the attorneys for conspiracy or whatever.

Following the hearing, the trial court signed an order granting the motion to strike
appellants’ petition.



          In April 2002, the trial court signed an order disbursing all of the settlement
funds from the registry of the court to the parties, in accordance with the terms of the
trial court’s earlier judgment.



Intervention and “Third-Party” Claims
          In their sole issue, appellants argue that the trial court erred in disposing of the
claims presented in their petition in intervention and “third-party” petition.
          With regard to the characterization of the claims presented in appellants’
petition, we hold that such claims are not true third-party claims because the
appellants were not parties to the underlying lawsuit at the time that their petition was
filed. See Tex. R. Civ. P. 38 (providing for circumstances under which parties to a
lawsuit may assert claims against third parties). Thus, we consider appellants’ claims
as claims in intervention in the underlying lawsuit.
          Any persons may intervene in an ongoing lawsuit “by filing a pleading, subject
to being stricken out by the court for sufficient cause on the motion of any party.” 
Tex. R. Civ. P. 60. Such persons have the right to intervene if they could have
brought the same action, or any part thereof, in their own name. Guar. Fed. Sav.
Bank v. Horseshoe Operating Co., 793 S.W.2d 652, 657 (Tex. 1990). A petition in
intervention may be filed at any time prior to the signing of a final judgment, without
leave of court. Id.
          We review a trial court’s ruling on a motion to strike a petition in intervention
for abuse of discretion. Id. A trial court abuses its discretion when it strikes a
petition in intervention that (1) meets the above test, (2) will not complicate the case
by “an excessive multiplication of the issues,” and (3) is “almost essential to
effectively protect the intervenor’s interest.” Id. Additionally, a trial court may not
strike a petition in intervention sua sponte, but may do so only after a party files a
motion to strike the petition. Id.
          At the time that the trial court signed its March 8, 2002 judgment, no motion
to strike appellants’ petition in intervention had been filed by any of the parties; thus,
despite language to the contrary in the trial court’s March 15, 2002 order, the trial
court was without authority to strike appellants’ petition at the time the court signed
its March 8, 2002 judgment. Accordingly, we hold that the trial court’s March 8,
2002 judgment was not a final, appealable judgment because it did not dispose of all
parties and pending claims, namely, the claims raised in appellants’ petition in
intervention. See Lehmann v. Har-Con Corp., 39 S.W.3d 191, 200 (Tex. 2001) (“A
judgment that finally disposes of all remaining parties and claims, based on the record
in the case, is final, regardless of its language.”).



          However, as noted above, shortly after the March 8, 2002 judgment was signed,
the heirs of the decedent filed a motion to strike appellants’ petition in intervention,
and the trial court conducted a hearing and granted the motion. In granting the
motion to strike the petition in intervention, the trial court disposed of all remaining
parties and claims, thus rendering its prior judgment final. See id. We will review
the trial court’s decision to grant the motion to strike for abuse of discretion.
          With regard to whether appellants demonstrated their right to intervene in the
underlying lawsuit, it is undisputed that appellants could have filed a separate lawsuit
in their own names asserting the claims brought against appellees in the petition in
intervention.



          In the petition in intervention, appellants alleged claims against their former
client, the decedent’s heirs, and the other attorneys participating in the underlying suit
for fraud, conspiracy to defraud, and tortious interference with contract. At the
hearing on their motion to strike the intervention, appellees argued that the
intervention was improper because it alleged several new causes of action against
new parties. At the time appellants intervened, the trial court had already made its
determinations as to the heirship of the parties and had signed a judgment
memorializing the parties’ agreements concerning the settlement of their wrongful
death claims and the apportionment of the settlement proceeds. Therefore, permitting
appellants’ intervention to proceed would have served only to complicate a fairly
simple and essentially resolved probate matter by “an excessive multiplication of the
issues.” See Horseshoe Operating Co., 793 S.W.2d at 657. Moreover, in their
petition in intervention, appellants did not allege, nor have they demonstrated by
argument and citation to the record on appeal, that their intervention in the underlying
proceeding was “almost essential to effectively protect [their] interest.” See id.
          Accordingly, based on the record presented, we hold that the trial court did not
abuse its discretion in granting appellees’ motion to strike appellants’ petition in
intervention. Further, we hold that, by finally disposing of all parties and pending
claims in its March 15, 2002 order granting the motion to strike the intervention, the
trial court’s March 8, 2002 judgment became final and appealable.
          We overrule appellants’ sole issue.
Conclusion
          We affirm the judgment of the trial court.
 


                                                                        Terry Jennings
                                                                        Justice

Panel consists of Chief Justice Radack and Justices Jennings and Higley.