IN THE SUPREME COURT OF TEXAS














IN THE SUPREME COURT OF TEXAS

 

════════════

No. 02-1084

════════════

 

In re Burlington Coat Factory Warehouse of McAllen, Inc.,

Relator

 

 

════════════════════════════════════════════════════

On Petition for Writ of Mandamus

════════════════════════════════════════════════════

 

 

Justice O’Neill, joined by Justice Johnson as to Part I,
dissenting.

 

 

I

I agree with the Court that no presumption of finality
attaches to the March 25th default judgment. See Lehmann v. Har-Con Corp., 39 S.W.3d 191, 200 (Tex.
2001). I also agree that the judgment’s Mother Hubbard clause, standing alone,
is insufficient to establish the judgment’s finality. But, contrary to the
Court’s assessment, additional language in the order provides “other indicators
of finality.” ___ S.W.3d at ___. Accordingly, I would
hold that the trial court did not abuse its discretion and deny Burlington Coat
Factory Warehouse’s mandamus petition.

In Lehmann, we
rejected a formulaic approach to determining the finality of judgments; even an
order that is entitled “final” may not be final. 39 S.W.3d at
200. Instead, we look for a “clear indication that the trial court
intended the order to completely dispose of the entire case.” Id. at
205. While the order here does not say, in so many words, that it is a
final judgment or disposes of the entire case, it clearly indicates that the
trial court intended it to be final in this case, which involves one plaintiff
and one defendant.

First, the judgment awards the plaintiff, Evangelina Garcia, postjudgment
interest “from the date this judgment is signed until paid.” The judgment also
awards Garcia a specific sum of prejudgment interest “measured from [the] date
of judgment.” In addition, the judgment states that “all relief not expressly
granted is hereby denied” and orders that Garcia “is entitled to enforce this
judgment through abstract, execution and any other process necessary.” As the
Court correctly observes, an interlocutory judgment may not be enforced through
execution. ___ S.W.3d at ___; Tex. R. Civ. P. 622. I would presume that the
trial court was aware of this limitation and thus would take the trial court’s
unconditional statement that Garcia “is entitled” to execution, together with
its award of pre- and postjudgment interest from the
date the judgment was signed and the denial of all relief not expressly
granted, as clear indications that the court intended the order to be final.

The same indicia of finality also distinguish this
case from Houston Health Clubs, Inc. v. First Court of
Appeals, 722 S.W.2d 692 (Tex. 1986).
In that case, we held that the court of appeals abused its discretion in
ordering the trial court to vacate an order granting a motion for new trial. Id. at
693-94. The trial court granted the motion after rendering a default
judgment on all of the plaintiff’s claims except punitive damages. We held that
the default judgment was interlocutory because it did not dispose of the punitive-damages
claim. Id. at 693. We did so because the underlying judgment did not
mention the claim “either expressly or by implication.” Id.
(emphasis added). While the judgment did provide that the plaintiff “shall have
. . . execution” and awarded interest from the “date of judgment,” the judgment
contained no Mother Hubbard clause, see Judgment, Erwin v. Houston
Health Clubs, No. 85-07146 (157th Dist. Ct., Harris County, Tex., May 14, 1985), our
touchstone for evaluating a summary judgment’s finality at the time. See Mafrige v. Ross, 866 S.W.2d
590, 592 (Tex. 1993), overruled by Lehmann, 39
S.W.3d at 204. Moreover,
the judgment generally provided that interest would run from “the date of
judgment,” whenever that might be, whereas in this case postjudgment
interest ran from a specific date — “the date this judgment is signed.” By
including in the order a statement that “all relief not expressly granted is
hereby denied” and otherwise treating the order here as final, the trial court
implicitly disposed of Garcia’s exemplary damages claim. Because the trial
court’s judgment was not interlocutory, the court did not abuse its discretion
in denying Burlington’s motion to quash execution.

II

I would additionally deny mandamus relief because
Burlington has presented us with an insufficient record. The trial court’s
order denying Burlington’s motion to quash execution recites that the court
“considered the motion, Plaintiff’s Response thereto, along with the evidence
presented” and “finds that the motion is not well taken, because of the Rule 11
agreement, because the default judgment was final, and pursuant to the
doctrines of judicial estoppel and judicial
admission.” Rule 52.7(a) of the Rules of Appellate Procedure provides that a relator “must file with the petition . . .
(1) a certified or sworn copy of every document that is material to the relator’s claim for relief . . . and (2) a
properly authenticated transcript of any relevant testimony from any underlying
proceeding, . . . or a statement that no testimony was adduced
in connection with the matter complained.” Tex. R. App. P. 52.7(a) (emphasis added).
Burlington did not file Garcia’s response to the motion to quash, although the
trial court order specifically states that the court based its ruling, in part,
on the response. Burlington also failed to provide the Court a transcript of
any hearing on the motion to quash, although the order suggests that evidence
was presented. See Tex. R. App. P. 52.7(a)(2).
Nor did Burlington file a statement that no testimony was adduced in connection
with its motion to quash. See id. Burlington’s
failure to provide the required record is significant here because it may have
shown that the parties treated the order as final, and thus shed light on the
order’s finality. See M.O. Dental Lab v. Rape, 139
S.W.3d 671, 674-75 (Tex.
2004). I would deny mandamus relief.

 

 

_______________________________

Harriet O’Neill

Justice

 

OPINION
DELIVERED: July 1, 2005.