In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-05-179 CV


____________________



IN THE INTEREST OF H.M.B. and B.E.B.






On Appeal from the County Court at Law


Polk County, Texas


Trial Cause No. PC03170






MEMORANDUM OPINION


 Pro se appellant Mary VanSchoonhoven appeals the trial court's judgment denying
her access to her maternal grandchildren H.M.B. and B.E.B. Because we hold the trial court
did not abuse its discretion, we affirm the trial court's judgment.

Factual Background Geri Tanner, the children's paternal grandmother, is the children's sole managing
conservator. Stephanie Keller, the children's mother, and appellee John Bartee, the
children's father, are the children's possessory conservators. VanSchoonhoven is the
children's maternal grandmother. H.M.B., a female, was born May 20, 1998. B.E.B., a
female, was born February 9, 1996. 

 Tanner filed a petition to establish parentage and the parent-child relationship, and the
trial court entered temporary orders in the suit to establish parentage and parent-child
relationship that appointed Tanner as the children's temporary sole managing conservator
and Keller and Bartee as temporary possessory conservators. Bartee was given possession
of the children and Keller was granted supervised visitation. 

 The trial court entered a "Final Order in Suit to Establish Parentage and to Establish
Parent-Child Relationship," appointing Tanner as the sole managing conservator and Keller
and Bartee as parent possessory conservators. Keller was granted limited visitation,
supervised by VanSchoonhoven and Keller's maternal grandparents. Bartee was granted
primary possession of the children. 

 Keller, appearing pro se, filed a "Motion to Modify in Suit Affecting the Parent &
Child Relationship," contending she and VanSchoonhoven had no enforceable visitation
rights and requesting custody of the children. Keller filed a first amended motion to modify,
requesting custody of the children. Appellees Tanner and Bartee filed a "Counter-Petition
to Modify Parent-Child Relationship," requesting the court to appoint Tanner and Bartee as
joint managing conservators and appoint Keller as possessory conservator. Tanner and
Bartee also requested that the court grant temporary orders to enjoin Keller from engaging
in various acts. The trial court granted a mutual temporary restraining order enjoining all the
parties from engaging in various acts. 

 While Keller's and the appellees' motions to modify were still pending,
VanSchoonhoven, appearing pro se, filed a "Petition in Intervention of Grandparents in Suit
Affecting the Parent Child Relationship," and requested access to the children. The trial
court entered a temporary order suspending VanSchoonhoven's visitation rights and
enjoining VanSchoonhoven from visiting the children at their school. The trial court ordered
that the "Final Order in Suit to Establish Parentage and to Establish Parent-Child
Relationship" remain in full force and effect. The court also suspended the prior orders of
visitation by Keller and VanSchoonhoven. 

 At the trial on VanSchoonhoven's intervention petition, the court denied the petition
in intervention and ruled that it was not in the best interests of the children for
VanSchoonhoven to have grandparent access. The trial court entered a "Final Order on
Intervenor's Petition for Grandparent Access." The court enjoined VanSchoonhoven from
various acts, including discussing the legal proceedings involving the children with the
children, showing the children legal documents or court orders affecting the children, and
enjoined VanSchoonhoven from visiting the children's school. The trial court "[ordered] that
the FINAL ORDER IN SUIT TO ESTABLISH PARENTAGE AND TO ESTABLISH
PARENT-CHILD RELATIONSHIP, rendered on March 21, 2003, shall continue in full
force and effect, except as otherwise provided herein." VanSchoonhoven filed her notice of
appeal. (1) 

 In her pro se brief, VanSchoonhoven failed to properly present issues for review,
failed to include clear and concise arguments with appropriate citations to authorities as to
how the trial court erred, and failed generally to comply with the other requirements of Tex.
R. App. P. 38.1. Appellees Tanner and Bartee interpret the issue presented as a challenge to
the trial court's discretion in denying grandparent access. Rather than requiring that
VanSchoonhoven amend her brief pursuant to Tex. R. App. P. 38.9, we will adopt the
appellees' interpretation of the issue presented and proceed accordingly.

Standard of Review

 The trial court is given wide latitude in determining the best interests of a minor child
in family law matters. Gillespie v. Gillespie, 644 S.W.2d 449, 451 (Tex. 1982); Lilley v.
Lilley, 43 S.W.3d 703, 705 (Tex. App.--Austin 2001, no pet.). We reverse the trial court's
judgment only if it appears from the entire record that the trial court has abused its discretion. 
Gillespie, 644 S.W.2d at 451. The trial court abuses its discretion only when it acts in an
unreasonable and arbitrary manner or without reference to any guiding principles. Lilley, 43
S.W.3d at 705. If the trial court's order is supported by sufficient, competent evidence there
is no abuse of discretion. Id. As the fact finder, the trial court resolves conflicts in the
evidence and determines the weight and credibility to give witness testimony. Id. The trial
court's decision on conflicts in evidence is generally viewed as conclusive. Id. at 705-06. 
Standard of Proof 


 A biological grandparent may request access to a grandchild by filing an original suit
or a suit for modification. Act of Apr. 6, 1995, 74th Leg., R.S., ch. 20, § 1, sec. 153.432,
1995 Tex. Gen. Laws 113, 157 (amended 2005) (current version at Tex. Fam. Code Ann.
§ 153.432 (Vernon Supp. 2005)). A trial court shall order reasonable access to a grandchild
by a grandparent if, at the time relief is requested, at least one biological parent of the child
has not had his or her parental rights terminated, access is in the best interests of the child,
and at least one of a set of other facts is present. Act of May 26, 1997, 75th Leg., R.S., ch.
1397, § 1, sec. 153.433, 1997 Tex. Gen. Laws 5250 (amended 2005) (current version at Tex.
Fam. Code Ann. § 153.433 (Vernon Supp. 2005)). 

 VanSchoonhoven's "Petition in Intervention of Grandparents in Suit Affecting the
Parent Child Relationship" was filed on November 4, 2004. Although this petition was filed
under the same cause number as the suit to establish parent-child relationship, we consider
VanSchoonhoven's petition to be an original suit and not a suit for modification. See Act of
Apr. 6, 1995, 74th Leg., R.S., ch. 20, § 1, sec. 153.432, 1995 Tex. Gen. Laws 113, 157
(amended 2005). The record reflects that Keller and Bartee, the children's parents, had been
living apart for the three-month period preceding the filing of VanSchoonhoven's petition. 
See Act of May 26, 1997, 75th Leg., R.S., ch. 1397, § 1, sec. 153.433(2)(B), 1997 Tex. Gen.
Laws 5250, 5251 (amended 2005). The only issue on appeal is whether the trial court erred
in determining that it was in the best interests of the children to deny VanSchoonhoven
grandparent access. 

 VanSchoonhoven called Bartee to testify. Bartee testified that he believed the
children loved VanSchoonhoven. Bartee also believed that VanSchoonhoven's separation
from the children had a positive effect on them. According to Bartee, B.E.B. stated that
VanSchoonhoven told B.E.B. that VanSchoonhoven had a prescription for marijuana and
failed a drug test. On cross-examination, Bartee testified that he was not opposed to
VanSchoonhoven visiting the children at school until she started showing the children court
documents and telling the children they would be living with their mother after the court
proceedings. Bartee also testified that he was concerned that VanSchoonhoven would visit
the children at school and disrupt them. 

 VanSchoonhoven called Tanner to testify. VanSchoonhoven introduced a letter
Tanner wrote to VanSchoonhoven on October 6, 2004. VanSchoonhoven requested that
Tanner read the letter to the court. In the letter, Tanner indicated that VanSchoonhoven
should have limited contact with the children because VanSchoonhoven went to the
children's school and told the children that Tanner and Bartee were "'bad people'" and that
"'help [was] on the way.'" Tanner also wrote that VanSchoonhoven does not have a sense
of "'family values'" because two of VanSchoonhoven's five children were taken from her
by child protective services, one child went to prison for aggravated sexual assault and
murder, and the other two were raised by VanSchoonhoven's parents. The letter also
indicated that Tanner did not like VanSchoonhoven calling herself "'a retard and a loser'"
in front of the children because it "'doesn't set very high goals for them.'" Tanner testified
that the children started calling themselves "'loser'" and "'retard'" because they heard
VanSchoonhoven use those terms. Tanner also testified that VanSchoonhoven "poison[s]
[the children's] minds" by teaching the children to lie and by giving the children notes that
indicate they will be living with their mother. Tanner indicated that she filed the November
10, 2004, restraining order against VanSchoonhoven to prevent VanSchoonhoven from
visiting the children's school and telling the children of the court proceedings and that they
would move to Minnesota with their mother. Tanner wanted to prevent VanSchoonhoven
from confusing the children and disrupting their lives. 

 VanSchoonhoven called Keith Smith, the children's school principal, to testify. Smith
testified that when he observed VanSchoonhoven and the children during VanSchoonhoven's
lunch visits, VanSchoonhoven did not appear to pose a threat to the children and they all
appeared to have a good time together. He also testified that he believed it was important for
a child to be in their grandmother's life. On cross-examination, Smith indicated that after the
trial court restricted VanSchoonhoven from visiting the school, the children's school
performance improved. Smith testified that the children's grades, attitudes, and attendance
improved. Smith noted that some of B.E.B.'s improvements may have been attributed to her
placement into a special education class. 

 VanSchoonhoven testified on her own behalf and requested visitations during Easter,
Christmas, and the children's birthdays. At trial, VanSchoonhoven testified that she had
been involved in the children's lives since their births and the children wanted to see her. 
She testified that she has a home with a fenced backyard where the children could play
safely. She asserted that she has purchased the children presents and their school clothes at
the beginning of the school year. She would provide the children with religious guidance by
taking them to church every Sunday. VanSchoonhoven also testified that she loved the
children, and she would never do anything to "jeopardize" the children. She also noted that
she only informed the children of how many days were left until the various hearings and
didn't tell them "bad things." VanSchoonhoven also admitted that she had smoked marijuana
because she had a nerve problem and her doctors advised her that smoking marijuana would
work better than taking pills. She testified that she has since been healed through prayer and
no longer takes drugs. 

 Tanner and Bartee called Billie Stephens, B.E.B.'s reading teacher, to testify. 
Stephens testified that B.E.B.'s attitude and grades improved after VanSchoonhoven stopped
visiting the school and that the improvements may have been attributed to the special
education class. Stephens testified that B.E.B. is now "doing great" and is "bubbly." 

 Tanner and Bartee called Tina Nunnellee, the children's Licensed Professional
Counselor, to testify. Nunnellee testified she started counseling the children in August 2004. 
According to Nunnellee, B.E.B. had a hostile and defiant attitude and H.M.B. had a quiet
anger. Nunnellee testified that the children were making progress until VanSchoonhoven
came to the school and showed them "papers" and told them "that they were going to go live
with their mother in another place." At that point, H.M.B. cried and became upset while
B.E.B. "reverted." After VanSchoonhoven stopped visiting the school, B.E.B.'s behavior
issues stopped and H.M.B. seemed relieved. Nunnellee also testified that, "[The children]
were doing great after the school lunch visitations stopped because there was [sic] no more
papers being shown to them, no more saying that, 'You're going to go live with your mom,
and you don't have to mind the people around you.' That stopped, and the children got a lot
better." According to Nunnellee, H.M.B. stated that VanSchoonhoven told H.M.B. that
VanSchoonhoven failed a marijuana drug test. Nunnellee testified that VanSchoonhoven
provided the children with information that was only appropriate for adults and "[t]his is a
problem that these children have come up against time and time again." Nunnellee
recommended that VanSchoonhoven not have contact with the children unless strictly
supervised by a neutral third party. 


Conclusion

 Considering all of the evidence in the record, we conclude that there was sufficient
evidence to support the trial court's finding that grandparent access was not in the best
interests of the children. While certainly the witnesses did not contest that the children loved
VanSchoonhoven or that VanSchoonhoven loved the children, the persuasive testimony from
the non-family witnesses indicated that VanSchoonhoven's visitations at school had a
disruptive influence on the children. The testimony of the school officials and the licensed
counselor indicates that after VanSchoonhoven stopped visiting the children at school, the
children's attitudes and school work improved. Accordingly, the trial court did not abuse its
discretion in denying grandparent access in this case. VanSchoonhoven's issue is overruled
and the judgment is affirmed.

 AFFIRMED.


 ___________________________

 CHARLES KREGER

 Justice


Submitted on September 2, 2005

Opinion Delivered March 16, 2006



Before McKeithen, C.J., Kreger and Gaultney, JJ.
1. Subsequent to the trial court's "Final Order on Intervenor's Petition for Grandparent
Access" the court entered a "Clarified Order in Suit Affecting the Parent-Child Relationship,"
apparently after a hearing, reinstating Keller's visitation rights pursuant to the court's prior
visitation orders. As requested in appellees' counter-petition to modify, the court also enjoined
Keller from engaging in various acts. This order appears to deny all other relief requested in
Keller's and appellees' motions to modify. Based on our review of the record, we are satisfied
that the "Clarified Order in Suit Affecting the Parent-Child Relationship" is a final judgment that
disposes of all pending parties and claims. See Lehmann v. Har-Con Corp., 39 S.W.3d 191, 200
(Tex. 2001). Thus, we have jurisdiction to hear VanSchoonhoven's appeal. See Tex. R. App. P.
27.1.