

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-19-00254-CV

_____

RAEANNE MARTIN, APPELLANT

V.

NANCY HIGGINSON, DEBBIE CHEADLE, EDWARD CHEADLE,
ARTHUR CHEADLE, WAYNE CARSON, FINNEY CHEADLE,
CHERYL SHOOP, AND KEITH SAWAYA, APPELLEES

On Appeal from the 72nd District Court
Lubbock County, Texas
Trial Court No. 2013-506,513; Honorable Ruben G. Reyes, Presiding

January 27, 2021

## MEMORANDUM OPINION

Before QUINN, C.J., and PIRTLE and PARKER, JJ.

This is the second appeal in a long-standing dispute concerning the right to conveyance of certain shares of a corporation. The first appeal was interlocutory and concerned the trial court's granting of a motion to vacate an arbitration award in favor of Appellees, Nancy Higginson, Debbie Cheadle, Edward Cheadle, Arthur Cheadle, Wayne

Carson, Finney Cheadle, Cheryl Shoop, and Keith Sawaya (hereafter the Higginson parties), filed by Appellant, Raeanne Martin. In that proceeding, Martin had argued to the trial court that because the parties had reached a settlement agreement (a Rule 11 Agreement), the arbitrators exceeded their authority by entering an arbitration award counter to that agreement. This court agreed and affirmed the trial court's order vacating the arbitration award. *See Higginson v. Martin*, No. 07-15-00343-CV, 2017 Tex. App. LEXIS 1268, at *18 (Tex. App.—Amarillo Feb. 14, 2017, pet. denied) (mem. op.).

After this court issued its opinion, in 2018, both parties sought entry of a final judgment based on the Rule 11 Agreement. After several hearings, the trial court entered a *Final Judgment* that incorporated verbatim the language from the Rule 11 Agreement. Martin then moved to modify the *Final Judgment*. Relying on *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191 (Tex. 2001), Martin questioned whether the *Final Judgment* was indeed final. She alleged it included contradictory paragraphs and left open potential claims against her in the future. The trial court denied her motion to modify and she has pursued this appeal.

The question now before this court is whether the trial court's *Final Judgment* is indeed final. Martin contends it is not. The Higginson parties argue to the contrary. By her original brief and reply brief, Martin contends: (1) the trial court erred when it denied her motion to modify the final judgment for purposes of finality and for clarity regarding specific performance on the transfer of shares; (2) the appeal should be abated and the cause remanded to the trial court for modification; and (3) alternatively, the trial court erred in its interpretation of the Rule 11 Agreement so as to leave open the possibility of claims being brought against her in the future. We agree with the Higginson parties that

2

the *Final Judgment* is a final judgment for purposes of our review and we affirm that judgment.

**BACKGROUND**

Although the historical facts are detailed in our prior opinion, we nevertheless provide a summary. *See Higginson*, 2017 Tex. App. LEXIS 1268, at *1-14. All parties to the underlying dispute are shareholders of Russell E. Womack, Inc. (REW), by way of inheritance from the original founder. Relevant to this dispute, three groups own 100 percent of the shares of the corporation: (1) the Higginson parties, (2) Martin, and (3) Michael V. Byrne, Richard Byrne, Jr., Barbara Holladay, West Womack, and Carolyn Cain, beneficiary of the Carolyn Cain Irrevocable Trust (hereafter the Byrne parties).[1] None of these three groups own nor control a majority of the shares.

Pursuant to a *Voting Trust Agreement* executed on December 31, 2007, and a *Shareholders' Agreement* executed on January 1, 2008, the parties sought to consolidate the voting power of their respective shares and to restrict the transfer of those shares. There are two paragraphs in the *Shareholders' Agreement* relevant to this appeal. Paragraph 3.3 provides for a right of first refusal as follows:

3.3 <u>Voluntary Transfer Restrictions</u>. Any proposed Voluntary Transfer of any Shares by a Shareholder is subject to the following provisions:

(a) Before the Voluntary Transfer, the Shareholder must send an Offer Notice to the Other Shareholders who are parties to this Agreement describing the Voluntary transfer (the "Offer"). If any term of the proposed Voluntary Transfer changes after the delivery of an Offer Notice, the Shareholder must promptly notify the Other Shareholders who are parties

---

[1] The Higginson parties are all related on one side of Russell E. Womack's family and the Byrne parties are all related on the other side of Russell E. Womack's family.

to this Agreement of the changes, and the subsequent notice will constitute a new Offer Notice for purposes of this Section 3.3.(a).

(b) For a period of sixty days after the date of the delivery of the Offer Notice to the Other Shareholders who are parties to this Agreement, the Other Shareholders have the right to accept or reject the Offer in writing. . . .

(c) If the Other Shareholders do not accept the Offer to purchase all the Shares that are the subject of the Offer by the expiration of the time periods described in Section 3.3(b) or if before the time periods expire the Other Shareholders reject the Offer in writing, the Shareholder is entitled to sell the remaining Shares strictly in accordance with the terms contained in the Offer Notice.

Paragraph 9.2, which provides for a specific contractual remedy in the event of a putative voluntary transfer of shares in violation of the *Shareholders' Agreement*, provides as follows:

9.2    Breach and Equitable Remedy.  Any purported Transfer in breach of any provision of this Agreement is void, will not operate to Transfer any interest or title in the purported transferee, and will constitute an offer by the breaching Shareholder to sell his Shares to the Corporation at the purchase price per Share determined pursuant to Section 7.1 above to be payable in accordance with Section 7.2(b).  In connection with any attempted Transfer in breach of this Agreement, the Corporation may refuse to transfer any Shares or any stock certificate tendered to it for Transfer, in addition to and without prejudice to any other rights or remedies available to the Corporation.  Each party to this Agreement acknowledges that each other party will suffer immediate and irreparable harm if a party hereto breaches, attempts to breach, or threatens to breach this Agreement and that monetary damages will be inadequate to compensate the nonbreaching parties for any actual, attempted, or threatened breach.  Accordingly, each party hereto agrees that each of the other parties will, in addition to any other remedies available to them at law or in equity, be entitled to specific performance or temporary, preliminary, and permanent injunctive relief to enforce the terms and conditions of this Agreement without the necessity of proving inadequacy of legal remedies or irreparable harm, or posting bond, any requirements to equitable and injunctive relief being hereby specifically waived.

When Martin attempted to sell her shares to the Byrne parties,[2] a lawsuit ensued. In 2013, Martin and the Higginson parties both filed competing petitions for declaratory relief. Martin sought a declaration to validate her attempted sale of her shares to the Byrne parties, while the Higginson parties filed a counter-petition for declaratory relief, seeking a declaration that (1) the *Shareholders' Agreement* was a valid contract that restricted Martin's right to sell her shares and (2) the right of first refusal was triggered. They also sought specific performance of Martin's purported obligation to "transfer all of Martin's shares in Russell E. Womack, Inc. to them" as well as recovery of attorney's fees.

In 2014, the trial court ordered the parties to arbitration. The result was an *Arbitration Award* that settled the dispute among the parties, which the trial court interpreted as a Rule 11 Agreement. The award accomplished seven things: (1) it confirmed that the *Shareholders' Agreement* dated January 1, 2008, was "valid and enforceable," (2) it provided that Martin breached that Agreement by "failing to sell and transfer her shares in [REW] to [the Higginson parties]," (3) it confirmed that Martin's purported transfer of shares to Michael V. Byrne and Richard Byrne, Jr. was void, (4) it provided that the Higginson parties were entitled to "specific performance of the sale and transfer of [Martin's] shares in [REW]," (5) it provided that the Higginson parties were not entitled to "a monetary damage remedy against [Martin] for breach of the Shareholders' Agreement," (6) it confirmed that "[t]hese findings do not preclude all or any of the other remedies that may be available to [the Higginson parties] either under the Shareholders' Agreement, or otherwise available at law or in equity," and (7) it awarded the Higginson

---

[2] The Byrne parties, who did not participate in arbitration, have been non-suited.

parties the sum of $400,000 for "arbitration fees, costs and reasonable and necessary attorneys' fees attributable to [their] claim against [Martin]."

Although the *Arbitration Award* was treated as a Rule 11 settlement agreement by the trial court, the arbitration panel was unwilling to approve the award and arbitration continued. After three days of testimony, the panel issued an award in favor of the Higginson parties. They asked the trial court to confirm the arbitration award. Martin responded with a motion to vacate or modify the award because the parties had entered into a settlement agreement leaving the arbitrators without authority to issue an award. The motion was granted and resulted in the interlocutory appeal previously referenced herein.

After this court affirmed the trial court's order vacating the arbitration award, the parties moved for entry of judgment based on the Rule 11 settlement agreement. The trial court's judgment provides in relevant part as follows:

> Pursuant to the Rule 11 agreement between [Martin] and [the Higginson parties], which was discussed and affirmed in *Higginson v. Martin*, No. 07-15-00343-CV, 2017 Tex. App. LEXIS 1268 (Tex. App.—Amarillo Feb. 14, 2017, pet. denied), the Court finds and declares that the "Shareholder's Agreement Between Certain Shareholders of Russell E. Womack, Inc." dated January 1, 2008 ("Shareholder Agreement") is valid and enforceable and that Raeanne Martin breached the "Shareholder Agreement" by failing to sell and transfer her shares in Russell E. Womack, Inc. to [the Higginson parties].

> Pursuant to the Rule 11 agreement between [Martin] and [the Higginson parties], which was discussed and affirmed in *Higginson v. Martin*, No. 07-15-00343-CV, 2017 Tex. App. LEXIS 1268 (Tex. App.—Amarillo Feb. 14, 2017, pet. denied), the Court further orders and declares that, under the provisions of the "Shareholder Agreement," the transfer of shares by Raeanne Martin to Michael Byrne and Richard Byrne [Jr.] is void, [the Higginson parties] are entitled to specific performance of the sale and transfer of Raeanne Martin's shares in Russell E. Womack, Inc., and, as a

6

result, [the Higginson parties] do not have a monetary damage remedy against Raeanne Martin for breach of the "Shareholder Agreement."

*These findings do not preclude all or any of the other remedies that may be available to [the Higginson parties] either under the Shareholder Agreement, or otherwise available at law or in equity.*

Pursuant to the Rule 11 agreement between [Martin] and [the Higginson parties], which was discussed and affirmed in *Higginson v. Martin*, No. 07-15-00343-CV, 2017 Tex. App. LEXIS 1268 (Tex. App.—Amarillo Feb. 14, 2017, pet. denied), the Court further finds and renders judgment that an award of costs of arbitration and attorney's fees in favor of [the Higginson parties], as the prevailing parties, on the issue of whether Raeanne Martin breached the Shareholder Agreement is justified, and hereby awards [the Higginson parties] the sum total of $400,000.00 determined for arbitration fees, costs, and reasonable and necessary attorney fees.

\* \* \*

*This judgment finally disposes of all parties and claims in this cause of action and is appealable.*

(Emphasis added).

### ANALYSIS

By her first issue, Martin contends the trial court erred in denying her motion to modify the *Final Judgment*. At the core of Martin's first issue is whether the judgment actually disposes of all claims and parties and forecloses any potential future suits against her. She alleges the judgment required specific "decretal language" to clarify that all issues and claims between the parties had been finally disposed of and also required clarification of the details of specific performance in transferring her shares of stock.

Martin proposes that the *Final Judgment* be modified to add the following six words, "[e]xcept as to Counter-Defendant Raeanne Martin," at the beginning of the paragraph reciting "[t]hese findings do not preclude all or any of the other remedies that may be available to [the Higginson parties] . . . ." She does not dispute the award of

7

$400,000 to the Higginson parties for arbitration fees, costs, and reasonable and necessary attorney's fees.

After briefing was completed in this appeal, the Texas Supreme Court issued its opinion in *Palma v. Young*, clarifying *Lehmann* on the finality of a judgment when there has not been a conventional trial on the merits. *See Palma v. Young*, 601 S.W.3d 799, 801 (Tex. 2020). As a result, the parties did not have the benefit of that decision.

In *Palma*, a summary judgment case which is a case without a conventional trial on the merits, the trial court signed a final judgment against only one of two defendants. The judgment recited "[a]ll relief not granted herein is denied. This is a final judgment." *Palma*, 601 S.W.3d at 800. On direct appeal, the cause was remanded to the trial court to clarify the judgment's finality. The trial court issued an order confirming that it had intended to render a final judgment. *Id.* Despite the trial court's confirmation, the appellate court concluded the judgment was still not final and dismissed the appeal for want of jurisdiction because the record failed to show how the suit was disposed of as to one of the defendants in the suit. *Id.* at 801.

The Supreme Court disagreed with the appellate court's application of *Lehmann* and clarified that an evaluation of the record to determine whether a judgment is final only applies when there is some doubt as to whether the judgment is indeed final. Otherwise, "a clear and unequivocal statement of finality must be 'given effect' even if review of the record would undermine finality." *Palma*, 601 S.W.3d at 801 (citing *Lehmann*, 39 S.W.3d at 206).

In the underlying dispute, the trial court was asked to rule on competing petitions for declaratory relief based upon an agreed settlement—again a matter of law proceeding, based on undisputed facts, without a conventional trial on the merits. Thus, the logic of the *Lehmann* rule, as clarified by *Palma*, applies in this situation. The *Final Judgment* unequivocally recites that it "finally disposes of all parties and claims in this cause of action and is appealable." The intent of the trial court is clear and there is no equivocation or doubt in the language used sufficient to invoke the *Lehmann* rule which would require us to look to the record to determine whether the judgment is indeed final. *See Palma*, 601 S.W.3d at 801, 802. Irrespective of the trial court's inclusion in the *Final Judgment* that its findings did not "preclude all or any of the other remedies that may be available," the judgment was "final and appealable because there was no question the trial court intended it to be so." *Id.* at 802 (citing *Lehmann*, 39 S.W.3d at 206).

Therefore, based on its unambiguous language, we find that the trial court's *Final Judgment* is a final appealable judgment. As such, Martin's first issue is overruled. Our disposition of issue one renders consideration of issues two and three unnecessary on whether to abate the appeal and remand the cause for modification of the judgment or for a determination of whether the trial court erred in its interpretation of the Rule 11 Agreement.

We note that during the hearings concerning Martin's motion to enter a final judgment and to modify the *Final Judgment*, her counsel argued that Martin could potentially face future litigation by other shareholders. The trial court acknowledged the possibility but agreed with counsel that the defenses of res judicata or collateral estoppel could be raised to defend against future litigation.

Martin is also concerned with the Higginson parties' request for specific performance regarding the sale of her shares of stock to them. However, because the trial court found the *Shareholders*' *Agreement* is valid and enforceable and that Martin had originally breached that agreement by the attempted sale of her shares to the Byrne parties, the sale of her shares is governed by the provisions of Paragraph 9.2 of that Agreement.

**CONCLUSION**

The trial court's judgment is affirmed.

Patrick A. Pirtle
Justice